## SUCCESSION OF E. J. WALSH.

Such a clause, "This certificate is transferable only on the books of the company and with its consent, by the said *Walsh* or his attorney," contained in a scrip certificate and made under a provision of the charter of the company, in order to secure the company, and if the person named in the certificate should be indebted to the company to enable it to set off any debt due to it by such person against what it may owe on the scrip, and even where the payment of the scrip is not yet exigible, to keep a control over its own obligations as a security for the indebtedness of the scripholder, is not unlawful, and a court of justice must give it effect according to its just import and in fulfilment of the intention of the parties to the contract; therefore, *Held :* That as the curator of the succession of *Walsh*, which was indebted to the company on a note for $3,176 71, had sold two scrip certificates for $2,040, the company who had acquiesced in the conversion of this asset into money in order to facilitate the administration of the estate and the liquidation of its affairs, was by reason of the peculiar terms of their contract with *Walsh*, and the circumstances of the case, entitled to this fund in preference to the other creditors of the succession, and that if the company had chosen to resist the transfer, the court would have been bound to maintain them in such resistance.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Walker & Peirce*, for *W. E. Leverich*, curator. *G. L. Bright*, for *J. Routh*, administrator, Mrs. *E. Shortridge*, testamentary executrix, and *W. H. Offensandt*, opponents and appellants. *M. M. Cohen*, for *Crescent Mutual Insurance Company*, opponents and appellants.

SLIDELL, C. J. It may be conceded that the company is not entitled to a *privilege* upon the fund in dispute, using that term in its technical sense. But we think the equity of the company to receive this fund, by reason of the peculiar terms of their contract with *Walsh*, and the circumstances of the case, is clear.

The fund in dispute is a sum of $2040, which came into the curator's hands under the following circumstances : *Walsh* left at his death two scrip certificates of the Crescent Insurance Company, one for $1440, dated 12th July, 1850, and one for $990, dated 12th July, 1851. These are written obligations or contracts of the company, signed by its president and issued under the charter. They certify that *Walsh* is at that time entitled to so many dollars in the invested funds of the company, and to receive on the second Monday in August of each year, interest at six per cent per annum, provided that when the losses and expenses of any year shall exceed the premiums earned during the same year, the deficiency is to be provided for from the aggregate funds of the company ; and the certificate is to be surrendered for reduction at the time the first payment of interest shall be due, subsequent to such deficiency being ascertained. The certificate concludes with the following clause: "This certificate is transferable only on the books of the company, and with its consent by the said *Walsh* or his attorney." By the charter of the company, these certificates are redeemable after net profits of a certain amount have been accumulated by the company.

The curator sold these certificates at probate sale for $2040, and took a rule on the company to show cause why the company should not be ordered to permit transfers on its books, which it had refused. After hearing evidence, the court ordered the company to permit the transfers of the scrip, reserving to the company all its rights to the proceeds to be exercised in due course of law. Under that order, we consider the proceeds as representing the scrip.

When a tableau of distribution was filed, the company, to whom *Walsh* was indebted for a note dated 1st June, 1850, at 12 months, given to cover premiums after 12th July, 1850, claimed the proceeds of sale, which the other creditors resisted, insisting on a *pro rata* distribution for the general benefit.

Let us consider how this matter would have stood if *Walsh* were living, and the judicial sale had not been made.

The obligation of the company was for the payment to *Walsh*, of a certain sum of money upon a certain contingency contemplated in the company's charter, with six per cent. interest meanwhile, subject also to the contingency therein contemplated; and the promise is made with the express reservation that it shall not be assigned, in other words, that no new creditor shall be substituted for *Walsh* without the company's consent. There is nothing unlawful in such a stipulation made under a provision of the charter, and a court of justice must therefore give it effect according to its just import and in fulfilment of the intention of the parties to the contract. The obvious intention of this clause, as deducible from the instrument and the charter under which it was executed, without the aid of the parol evidence offered at the trial, was to secure the company, if the person named in the certificate should be indebted to the company ; to enable it to set off any debt due to it by such person against what it might owe on the scrip, and even where the payment of the scrip was not yet exigible, to keep a control over its own obligation as a security for the indebtedness of ths scripholder. If then *Walsh*, supposing him to have survived, had called upon the company for matured interest, the company could have said, we will credit it on your note which you have failed to pay ; or if *Walsh* had sold the certificates and then required the company to permit a transfer to his vendee, the company would lawfully say, "no—pay your note first—if you do not, we will pass the accrued and accruing interest to the credit of the note, and when the principal of the scrip becomes exigible, will appropriate it in like manner. Our agreement was, that without our consent to a change, you should remain our creditor."

The equity of giving the company the benefits of this agreement, is eminently apparent, with regard to the scrip certificate issued in July, 1851 ; for it arose out of the profits of company's business for the antecedent year (the company being conducted on what is familiarly known as the *mutual* system) ; *Walsh's* note was for premiums of that year, and the certificate was issued to him by reason of those very premiums.

Such would have been *Walsh's* position. Is the case changed by his death ? Clearly not. The certificates passed as assets to his succession, with precisely the same limitations and distinctions. The contract was unchanged. The curator would not have been allowed to collect the interest, whilst the note of the deceased remained unpaid, nor could he substitute a new creditor without the company's assent.

If the company had chosen to resist the transfer, we should have been bound to maintain them in such resistance. But it has chosen to acquiesce in the conversion of this asset into money in order to facilitate the administration of the estate and the liquidation of its affairs, and it seems to us it would be a clear violation of the terms and spirit of the contract, and of the reservation made in the Judges order, to take the fund from the company and distribute it *pro rata* among all the creditors.

This case is the first of the kind presented for the consideration of this court, and our attention has not been directed to decisions of other tribunals upon the precise subject.  But we find a very satisfactory analogy in the ruling of the Supreme Court of Pennsylvania, in *Morgan* v. *Bank of North America*, 8 Serg. & R. 73.

With respect to the appellants, *Offensandt*, *Routh* and *Shortridge*, we think there is no error in the judgment below.  They were put down on the previous tableau not as privilege creditors, but as claiming privileges, and moreover the funds to be distributed under the present tableau are new funds, not embraced in nor concluded by the previous tableaux.

We think the judgment should be reversed as to the Crescent Insurance Company, and affirmed in other respects.

It is therefore decreed, that the tableau and judgment be amended as to the said Crescent Mutual Insurance Company; that the sum of $2040, proceeds of sale of certain scrip of said company in said tableau mentioned, be paid by the said curator to said company, by said company to be credited to said succession upon the indebtedness of said succession to said company, and that in all other respects the judgment be affirmed.  The costs of the appeal to be paid one-half by said succession, and the other half by the said *Routh*, administrator, *W. H. Offensandt*, and Mrs. *Shortridge*, executrix.