SHAW & CO. *v.* A. GRANT, sr., & A. GRANT, jr.

The cases of *Shaw & Zunts* v. *Knox* and *McCutchon, Howell & Co.* v. *Wilkinson*, 12 An. pp. 41 and 483, reviewed and the principles of those cases re-affirmed.

The Act of 1843, p 44, gives a privilege *for necessary supplies*, furnished to any farm or plantation, on the product of the last crop and the crop at present in the ground. Money advanced cannot be considered as the *necessary supplies of the plantation* in the sense of the statute; although it may be exchanged for necessary supplies, it does not give the commission merchant or any other person who has furnished it a privilege upon the crop in the hands of third persons. It is otherwise as to the crop which has actually been shipped to the commission merchant.

The payment of the planter's drafts in favor of his laborers and workmen does not subrogate the party so paying to the privileges of the laborers and workmen.

The law gives the furnisher of necessary supplies for a plantation a privilege upon the crop *at present in the ground*. But that privilege cannot be extended to a crop yet uncultivated, and towards which nothing has been done.

APPEAL from the District Court of the Parish of Plaquemines, *Rousseau*, J. *H. D. Ogden & J. A. Rozier*, for plaintiffs and appellants. *E. Rawle*, for defendants.

MERRICK, C. J. The appeal in this case was brought up by the appellee, *Alexander Grant, sr.*, who has filed an answer to the appeal praying an amendment of the judgment in his favor. It is conceded by appellant's counsel, that this case as to *Alexander Grant, sr.*, (who was a purchaser of the "Nain" plantation at Sheriff sale) is governed by the principles enunciated in the two cases of *Shaw & Zunts* v. *Knox* and *McCutchon, Howell & Co.* v. *Wilkinson*, lately decided by this court, if those cases can be considered as law. 12 An. 41 and 483.

The correctness of those two decisions has therefore been questioned in this case, and the court has been earnestly requested to review them and declare the same overruled,

In the case of *Shaw & Zunts* v. *Knox* we said:

"The payments made by them (the plaintiffs) for debts due by *Knox*, even though they may have been contracted for supplies, can be considered only as so much money advanced; and this remark will apply as well to payments made for labor and the price of machinery, as to payments made to furnishers of supplies. Subrogation by operation of law does not take place in favor of one who pays a privileged debt in the absence of any obligation so to do, and it is not pretended that the plaintiffs have acquired any right by conventional subrogation."

We see nothing in these remarks which requires modification or even inspires a doubt of their correctness.

Privileges are *stricti juris*, as the lawgiver has himself declared. They "can be claimed only for those debts to which it is expressly granted in this Code." C. C., 3152; 3 L. R., 158. They cannot be extended to analogous cases. 18 L. R., 72; *Hoffman* v. *Lawrens et als.*, 6 An., 113; *Guion* v. *Brown*, 2 An. 774, 10 An. 429.

The Act of 1843, p. 44, gives a privilege *for necessary supplies* furnished to any farm or plantation on the product of the last crop and the crop at present in the ground.

Is the draft which the merchant has paid, or the promissory note which he

53

has taken up a necessary supply furnished the plantation? It seems to us that it cannot be so considered in any reasonable sense. What does the merchant furnish the planter when he pays his draft or takes up his note? He advances *money*, and so the plaintiffs considered it in this case, for they have (besides interest) charged the defendants with two and a half per cent. for advancing, amounting to $252 78 for such commissions. Now, as money cannot be considered as the necessary supply of the plantation, in the sense of the statute, although it may be exchanged for necessary supplies, it does not give the commission merchant or any other person who has furnished it a privilege upon the crop in the hands of third persons, although it is otherwise as to the crop which has been actually shipped to the commission merchant. C. C., 3214; 3 An., 82; 7 An. 336; Story on agency, § 364.

We have been referred to the case of *Farrar* v. *Rowley*, 3 An., 277, as being in conflict with these views. Whether the court would now feel disposed to go as far as it did in that case, it is not necessary to determine. Certain it is, we do not think the doctrine can be extended beyond the very case the court then had before it. The term "supplies," under Art. 3204 C. C., relative to ships, has been held not to cover money advanced to purchase materials for a vessel, although both words "materials" and "supplies" are used in the Article. *Grant* v. *Fiol*, 17 L. R., 158; 19 L. R., p. 1; 4 An., 10, *Hyde* v. *Culver*.

But it is said, that by the payment of the drafts in favor of the laborers and workmen the plaintiffs are subrogated to their rights, because laborers have a privilege superior to that of the furnisher of supplies, and therefore, subrogation takes effect by operation of law. We are pointed to Art. 3181 as giving such privilege. We do not think the Article in question, supports the position for which it was cited. The class of persons therein named is "clerks, secretaries and other agents of that sort." 3 An., 498; 8 An., 42.

That the payment of a privilege debt does not ordinarily subrogate the person who makes payment to the rights of the creditor, is a proposition which we are not permitted to doubt. The Code is express and the decisions are uniform. C. C. 2156, 2157; *Brother, Syndic* v. *Constance Fugot*, Opinion book 26, p. 361; 9 R. 477; 5 R. 415; 7 N. S. 602; 4 An. 576; 11 An. 294. And so it has been held as to the payment of debts for supplies to vessels. 19 L. R., 9; 17 L. R., 158, and 2 Rob., 36. We see no reason to distinguish the case at bar from those cases, and we are not advised of any other legal ground upon which a different conclusion might have been arrived at in the case of *Shaw & Zunts* v. *Knox*.

We are next informed that the case of *McCutchon, Howell & Co.* v. *Wilkinson* is not law, the present case being, as plaintiffs' counsel admit, precisely analogous to that case.

If we understood the oral argument of plaintiffs' counsel correctly it is, that in order to judge of the question whether the supplies are to attach to a crop, or not, it is only necessary to look at the calendar month in which they were furnished. For instance, if they are furnished in January, they drag after them the continuous supplies of the preceding year and attach with such preceding supplies to the crop of that year, although they were supplied to take off the crop of the preceding year alone, and were not furnished for, nor contributed to aid in making the crop of the new year to which they attach. And if the last article in the account was furnished in December, the whole account would apply to that year alone.

If privileges are *stricti juris*, there is still greater reason so to consider them when it is sought to enforce them against innocent third persons.

The law gives the furnisher of necessary supplies for a plantation a privilege upon the crop *at present in the ground.* How can we extend it to a crop which has not yet been planted or which remains yet to be cultivated, and towards which nothing has been done? To do so, would be.to legislate to the prejudice of third persons without notice, as will be apparent by a few examples.

The factor (as in the present case) furnishes the supplies for the year 1854. On the 31st of December, he has not received a hogshead of sugar or a barrel of molasses of the growth of that year. In January of 1855 he sends to the planter a few barrels and hogsheads which are filled with molasses and sugar, and the whole of the crop is then shipped to him. Now, because he sent a few articles in January, to contain part of the crop, he is to have the right, as we understand plaintiff's argument, to apply the whole of the crop to his general advances of the preceding year; to dissect that account, take the supplies therefrom, add them to the items of supplies for 1855, and hold the whole as a privilege claim over the crop of a third purchaser of the plantation who has entirely cultivated the crop himself and whose own factor has furnished the supplies for the crop which he has made!

Take another example : a cotton planter has a few bales of ungathered cotton to pick in January. His factor sends him baling sufficient to put it up. The whole is then sent to such factor. Now, according to plaintiff's theory, because the single item of baling was sent in January for the crop grown the preceding year, although gathered afterwards, the factor is to have not only that crop, but a privilege upon the next for which another merchant has furnished the supplies!

An overseer has been employed by the month to take off a sugar crop; because his labor is not completed on the thirty-first day of December, he is to have the right to share equally with the overseer who makes the next crop and to prime the factor who has furnished the supplies for it.

An overseer remains over a day or two after the first of January either to complete gathering the crop or to hold the place until his successor comes, he has the right to share equally with the overseer who has made the new crop and has a privilege superior to the furnisher of supplies.

Suppose again a planter has shipped his entire crop in December and has *commenced the cultivation of his new crop.* His factor furnishes him in one lot, on the 31st of December, all the pork or corn he needs for the coming year in order to make and gather his new crop. Would his privilege be defeated because the item was furnished in the year 1854? Would it not be a sufficient answer to say and prove that the provisions were furnished for the crop of 1855 and were actually used and consumed in making it? If so, then in a controversy as to a privilege for supplies where the property of third persons is sought to be subjected to the privilege, an inquiry may be made as to the condition of the crop at the time they are furnished and the day in the calendar will not be conclusive upon the parties.

These and other examples which may be given show that the rule established in the case of *McCutchon, Howell & Co.* v. *Wilkinson* (that where the supplies are clearly shown to have been furnished for taking off a particular crop that they cannot attach to the next crop, and consequently draw after them as a privilege the supplies of the preceding year) is not only within the letter

but the spirit of the law in question and is a reasonable interpretation of the same.

But we are informed that this case is in direct conflict with the cases of *Johnson* v. *Kennedy*, 3 Rob., 216, *Welsh* v. *Shields*, 6 Rob. 484, and *Farrar* v. *Rowley*, 3 An., 277. In the first of these cases, the overseer had acted as such upon the plantation of the deceased for the year 1839 and some months in the year 1840. In the absence of all proof to the contrary, the court might well suppose that he was employed to make the crop of that year. In the case of *Welsh* v. *Shields*, the overseer was on the plantation at the time it was bought by *Barrow*, and the latter continued him as such to cultivate the crop which the court say was "then growing," 6 Rob., 486. In the case of *Farrar* v. *Rowley*, the overseer had been on the place in that capacity for eight months, and it is hardly possible to suppose that he was employed in cultivating the crop upon which he claimed his privilege. It is thus apparent that these cases are quite different from that where it is expressly shown that the services *were not rendered* towards the cultivation of the crop upon which the privilege is claimed, and where a third person has purchased the property for a full price and without notice.

Again, there would be just as much reason in calling that portion of the crop of 1854 which remained ungathered in the commencement of 1855, the crop of 1855, as there would be to consider the services of those employed in taking it off as services of that year. If they furnished supplies for or were employed to take it off, their privilege ought to be considered extinguished when they have received the full price for which it was sold.

In the case at bar, the plaintiffs did not receive any portion of the crop until after the first day of January. The only items in the account after that date which might be allowed as a privilege are two items for corn, items for bi-sulphite of lime and several (much the greater part) consisting of barrels and half barrels for the molasses. It appears by the account current that these barrels and half barrels were with others returned filled with the products of the crop to their factors.

They received from the sales of the sugar and molasses $6,745 25, it being more than sufficient to satisfy and extinguish all the privilege claims which we find charged in their recount. Their counsel admit that the supplies for which they claim a privilege were furnished towards taking off the crop which they have received, and that at the time they were furnished nothing was done towards the new crop, although they assert the germs of it were in the earth in the form of stubble cane.

They have received back what they have furnished, and equity uncontrolled by positive law does not allow them to gather where they have not planted and prosper by the labor and expenses of others.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed as to the said *Alexander Grant*, sr., that the sequestration be set aside and plaintiffs' demand against him be rejected, the plaintiffs paying the costs of both courts.

SPOFFORD, J., took no part in this decision.