Hon. J. G. Taliaferro,  
Hon. R. K. Howell,  
Hon. W. G. Wyly, } *Associate Justices.*  
Hon. W. W. Howe,

---

No. 1456.—Succession of Octave S. Rousseau, deceased. On Opposition to Tableau of Executrix.

The charter of the city of New Orleans of 1856 accords no privilege in favor of the city or the contractor on the property of a front proprietor for making a banquette or pavement on the street. Section 110 of the charter, which gives a privilege in favor of the city for ·assessments of taxes on the property assessed, has reference only to assessments regularly made in conformity with law, and can not be extended by implication to other burdens authorized to be imposed on the property within the corporate limits of the city.

In the distribution of the proceeds of an insolvent estate, when the proceeds of the sale of the personal effects are insufficient to discharge the general privileges, and the proceeds of the sale of the real estate which is mortgaged, are required to contribute, the proceeds of the mortgage which is least ancient, must first be applied, and so on, in regular succession, or until the privileges are discharged. This rule applies, whether the property mortgaged is situated in one or several parishes of the State; that is, if the mortgage on one piece of property, in one parish, is less ancient than that of another parish, it must first be exhausted before that of the other parish, of a prior date of registry, can be called upon, and the mortgage of the latter parish, of prior date, can only be called upon to make up the deficie*

APPEAL from Second District Court, parish of Orleans. *Thomas, J. Randolph, Singleton & Brown,* for executor, appellant. *Hornor & Benedict,* for John Coleman & Co., appellants. *Edward Bermudez* and *H. D. Ogden,* for estate of Dufossat.

TALIAFERRO, J.　On the fifth of December, 1866, Aimee Rousseau, dative testamentary executrix of her deceased brother, filed a tableau and classification of the debts and claims against the estate, which is largely insolvent.　Various oppositions were filed, but it is necessary to notice only two of these, which relate to claims for which privileges and priority of right are asserted upon the funds to be distributed.

The first of these is the opposition to the claim of Coleman & Co., of $371 23, with interest, for paving, for which he claims a privilege on the proceeds of the house and lot formerly belonging to the succession, situated on Esplanade street, in New Orleans.

. The other is that of Boisblanc & Dufossat, who represent mortgage creditors, opposing the application of the proceeds of the property, subject to their mortgage, to a pro rata distribution with those of the property subject to the mortgage of the executrix, to pay general privileges, there being no other fund out of which to pay them.

In amending the tableau and adjusting the claims bearing privilege and mortgage, the court below rejected the pretensions of Coleman & Co. to the privilege claimed for their debt, and subjected the proceeds of the property on which the mortgage of the executrix bore, to the payment of the general privileges, on the ground that her mortgage is the least ancient and first liable to the payment of general privileges in default of other funds to pay them.　From this judgment Coleman & Co. and the executrix have appealed.

*First*—As to the claim of Coleman & Co.　Under a contract with the city, they undertook to pave a part of Esplanade street.　A house and lot on that street, forming a part of the succession of Rousseau, was mortgaged to E. S. Dufossat, and the claim of Coleman & Co. is for paving in front of that property, for which, they aver, the property was bound, and that the law accords them a privilege upon the proceeds to secure the payment of their claim.　It is objected that the privilege, if it ever existed, was accorded by the act of 1840, and that, according to that act, it is prescribed.

The counsel of Coleman & Co. refer to the act of 1856, revising the city charter, section 110, to show that for assessed taxes upon city property a privilege is granted upon the property subject to the tax, and that the privilege so granted continues until the tax is paid.　They refer to a clause in the contract between the city and Coleman & Co. to show a subrogation to the latter of all the rights of the city to seize and sell the property in case of non-payment of the bills for paving, and that the contractors were to collect the bills against the property holders for their part of the cost of paving.

We find nothing in the act of 1856, revising the city charter, which establishes a privilege to secure the payment of the cost of paving. Section 110 of that act declares, " that taxes, assessed under and by

virtue of this act on the property, real or personal, of any person or corporation, are hereby declared to be a lien and privilege upon the said property, including stores of such persons or corporations, to date from the first day of March of the year for which they may be assessed, any alienation thereof or incumbrance thereon notwithstanding ; and said lien or privilege shall exist, in favor of the city of New Orleans, for the respective amount of taxes assessed, until the same shall be fully paid ; and the same shall be paid in preference to all mortgages and incumbrances other than taxes due the State." This seems to apply to the general annual tax founded upon assessment. Sections 119 and 120, after prescribing the conditions upon which paving and banquetting are to be made, declare that the cost of the same shall be paid by the owner or owners of real property in front of the pavements and banquettes so made, but establish no privilege upon the property to secure the payment of the cost incurred. The act of 1840, page 51,. section 7, accorded a privilege of this kind, but the privilege continued only two years. If that act were still in force, the claimants could not avail themselves of it, for their claim would be prescribed. Their contract is dated ninth of May, 1860, and their paving bill was recorded in the mortgage office September 23, 1862.

Privileges being *stricti juris*, they can be recognized only in cases where they are clearly established by law. We think, therefore, the objection to the claim of Coleman & Co., as entitled to privilege, was properly sustained by the court. 4 An. 1; 11 Johnson, 80. See case of Roony *v.* Broun, 22 An. 51.

*Second*—The contest between the two sets of mortgage creditors, in relation to the *onus* of discharging the general privileges, unprovided for from other sources.

The opponents, Boisblanc and Soniat, executors of Mrs. Lise Dufossat, show that their mortgage was executed on the twenty-second April, 1862, and registered the next day. The mortgage in favor of Miss Aimee Rousseau, the executrix, was executed on the nineteenth of March, 1866, and registered on the twenty-sixth of the same month. The first named mortgage bore upon the property of Rousseau on Esplanade street, in New Orleans; the last on a tract of land in the parish of St. Bernard.

It is strenuously held on the part of the executrix that these mortgages being upon different pieces of property, and situated in different parishes, are of equal rank, notwithstanding their execution at different times, and consequently the contributions, to be made to pay the general privileges, should be pro rata from the proceeds of both the city property and that in St. Bernard ; that the article 3236 of the Civil Code has reference to different mortgages on the same object, and not to different mortgages, affecting different objects.

In prescribing the manner in which mortgaged property shall be discussed to pay general privileges, when such a contingency arises, we are unable to find that the law makes any distinction between mortgages, on the ground that some affect one piece of property, and others a different piece.

We find but the one rule laid down for enforcing on mortgaged property general privileges unprovided for, and that is to proceed first against the property embraced by the mortgage which is least ancient; if that is insufficient to pay the privileges, then the property affected by the mortgage which next precedes the one least ancient, is put in requisition, and so on, in regular gradation, through the entire series, or until the privileges are acquitted. The date determines the rank, *pro hac vice*, and this seems clear from the fact that no equality of rank is recognized, except in one single case, and that is where mortgages are of the same date.

Nor do we see the impropriety urged against this rule. A, owning several tracts of land, mortgages one of them to B. In looking to his security, B sees that, in the contingency of A's future insolvency and the possible retroaction of privileged claims against the immovable property of A, there are, between the property mortgaged to him and the privileges to be enforced, several parcels of unincumbered property, to be first proceeded against, before he could be disturbed. Now if, subsequently to B's mortgage, C should take a mortgage on these several immovables, and, in the event of a contribution by the mortgages to discharge general privileges, he should be allowed to come in, pro rata, with B, claiming that his mortgage is of equal rank with B's, and were sustained in the pretension, would not this be weakening B's security? In other words, could A, by granting the supposed mortgage to C, place B in a worse condition than he was at first? Besides, parties are presumed to contract in reference to the laws existing at the time of the contract. In the hypothetical case proposed, C would be presumed to know, when he accepted his mortgage, that, in the future, if general privileges should have to be enforced against the mortgaged immovables, the property subject to his mortgage would be first required to contribute, because his mortgage would be "the least ancient."

But, whether the rule we have been considering, be a wise and equitable one or not, is not for us to determine. We are unable to give it any other construction, and that is in unison with the views frequently taken by our predecessors. See 11 An. 482; 18 An. 142, 169 and 721.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs in both courts.

REPORTER—By an oversight, this case was placed among the list of unreported cases for 1869. See 21 An. 778, No. 1456.