# Mobile Mutual Insurance Company *v.* Cullom *et al.*

*Bill in Equity by Corporation, to declare Lien on Stock.*

1. *Lien of corporation on stock, for debts due from stockholder; at common law, and under statutes.* — At common law, stock in an incorporated company was capable of alienation or succession in any of the modes by which other personal property could be transferred; and there was no implied lien, or equity, in favor of the corporation, for a debt due from the stockholder. But, where such a lien has been expressly declared by statute, or the charter of the corporation, the courts have refused to confine it to debts due for stock only, and have extended it to debts due generally from the stockholder to the corporation, unless the language of the statute compelled a different construction.

2. *Same; under charter of Mobile Mutual Insurance Company.* — The rule above stated, applied to the charter of the Mobile Mutual Insurance Company (the 12th section of whose charter declares, that "the company shall have a lien on the stock of each stockholder, for any debt or liability of such stockholder to the company, and may refuse to allow the sale or transfer of such stock until such debt or liability is discharged"), gives the company a general lien for all debts due from the stockholder prior to notice of the assignment of his stock.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. ADAM C. FELDER.

The appellant was incorporated by act of the legislature of this State, approved February 6, 1866; the 5th and 12th sections of said act of incorporation being in the following words: —

"Sec. 5. *Be it further enacted*, That each and every subscriber to the stock of said company shall, at the time of subscription, pay to the person or persons receiving the subscriptions for the company ten per cent. upon the amount subscribed for by him; and for the residue of the amount subscribed shall execute his promissory note, payable to the said company on demand, without interest, with such securities thereto as may be required by said commissioners; and each such note shall state that it is given for stock subscribed for in said company, and subject to the conditions provided in the charter of the company in regard to stock notes. The money so paid, and the notes so executed, shall constitute the capital stock of said company; and the notes so executed shall be delivered by the commissioners receiving them, to the secretary of the said company, as soon as conveniently may be, after such secretary has been elected and qualified. No payment shall be required to be made on said notes, unless and until

such payments may be required by losses sustained, or expenses incurred by the company, and may be ordered or called for by a vote or resolution of the president and directors of said company. Whenever the losses and expenses of the company shall exceed its profits, so as to make a payment upon said notes necessary to discharge the liabilities of said company, it shall be the duty of the president and directors of the company, and they shall have the power to cause and call for such payments to be made, from time to time, as may be necessary ; and the sum so required and called for shall be assessed and proportioned ratably upon the stockholders. Reasonable notice of every such call shall be given to each stockholder, in such manner as may be prescribed by the by-laws and regulations of the company, or, in the absence of any such by-laws or regulations, as may be prescribed by the vote or resolution of the president and directors making the call. If any stockholder shall fail to make payment of the amount so assessed against him, for ten days after such notice thereof, the whole amount due on his note, with interest thereon from the time of the call, shall be due and payable, and may be sued therefor. Every payment so made shall be credited on the proper note, until the note is wholly paid. No stockholder shall be personally liable for the debts, losses, or liabilities of the company, beyond the amount of the note given by him."

" Sec. 12. *Be it further enacted*, That the president and directors of the company may prescribe the manner and form in which certificates of stock in the company shall be issued, and the manner and form in which said stock is transferred ; and the company shall have a lien on the stock of each stockholder, for any debt or liability of such stockholder to the company, and may refuse to allow the sale or transfer of such stock until such debt or liability is discharged."

Smith Cullom, one of the defendants in this case, was an original subscriber for fifty shares of stock in this company. He paid ten per cent. on the amount of his subscription, as required by the 5th section of the charter above quoted, and gave his note for the residue ($4,500), with John Whiting and William O. Baldwin as his sureties. Afterwards, at different times, he sold thirty-four (34) of his shares, leaving only sixteen (16) shares standing in his name on the books of the company. He also made several payments on his stock note, from time to time, leaving a balance of $283.73 due thereon from him to the company on the 28th July, 1870. In addition to this amount, he was indebted to the company at that time in the further sum of $639.38, on account of premiums on insurance up to the 29th January, 1870, for which he had given his note to the company, and $34.36 for subsequent premiums.

On the 25th February, 1870, Cullom transferred his sixteen shares of stock to said William O. Baldwin and the personal representatives of the estate of John Whiting, deceased; but this assignment was not entered on the books of the company, nor was the company notified of the said transfer.

On the 18th May, 1871, the company filed its bill in equity against Cullom, Baldwin, and the personal representatives of Whiting, alleging the facts above stated, and asking a decree declaring a lien on said sixteen shares of stock 'for the entire amount due from said Cullom to the company. A joint answer was filed by Baldwin and the personal representatives of said Whiting, admitting the facts above stated, as to Cullom's original subscription for stock, his transfer of some of his shares, and the amount due from him to the company for the unpaid balance due on his stock note; but alleging that, though said original subscription of stock was taken in the name of Cullom only, and his individual note given for the amount, with Baldwin and Whiting as his sureties, said stock, in fact, belonged to a partnership consisting of said Cullom, Baldwin, and Whiting; and insisting that the company had a lien on the stock only to the extent of the balance due on the note given for stock. The answer disclaimed notice to the respondents of Cullom's other indebtedness to the company, and did not aver that the company had knowledge of the existence of said alleged partnership. The evidence established the indebtedness of said Cullom to the company, as above stated, and his transfer of his stock to said Baldwin and the personal representatives of Whiting, for a valuable consideration; but this assignment was not made on the books of the company, and it does not appear when the company was notified of it. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, but only declared a lien in its favor for the unpaid balance due on the note for stock; and his decree is now assigned as error by the complainant, because he did not allow and declare a lien in its favor for the full amount of the indebtedness due from Cullom.

Wm. G. Jones, for the appellant. The 12th section of the appellant's charter expressly gives a lien on stock for all indebtedness from the stockholder to the company. Even if the language of the charter were at all doubtful on this point, all the authorities hold that the lien extends to all the indebtedness of the stockholder; and when given by the charter, every body must take notice of the lien. *Union Bank of Georgetown* v. *Laird*, 2 Wheaton, 390; *Rogers* v. *Huntingdon Bank*, 12 Serg. & R. 77; Angell & Ames on Corporations, §§ 355, 570, 571. Moreover, the charter required a stockholder to give his

note with sureties for the unpaid balance of his stock; and Cullom's note was signed by Whiting and Baldwin individually, as his sureties. To allow them now to say that they were not really his sureties, but partners with him, and therefore principals, would enable them to perpetrate a fraud on the company.

P. HAMILTON, contra. — The lien given by the charter was intended to apply only to the stock debt, and to establish on a firm basis the capital on which the company was to do business. A corporation has no general lien on the stock of a shareholder, and is liable in damages for a refusal to recognize the rights of an assignee of a stockholder. Sargent v. Franklin Insurance Company, 8 Pick. 90, 96. Where the express right of lien was given by the charter, the assignee was acknowledged to have a perfect right, on payment of the balance due for stock. Quiner v. Marblehead Insurance Company, 10 Mass. 476 ; Mass. Iron Company v. Hooper, 7 Cushing, 183. Whiting and Baldwin were sureties on Cullom's note for stock, as the company well knew, and as the note shows on its face. As such sureties, they had the right to pay off the debt for which they were bound, and to protect themselves by taking an assignment of it. This is all they ask, and all the chancellor allowed them.

BRICKELL, J. — The common law regards the shares composing the capital of an incorporated company as personal property, capable of alienation or succession in any of the modes by which that species of property may be transferred. Angell & Ames on Corporations, § 557 ; Sargent v. Franklin Ins. Co. 8 Pick. 90. Thus regarding such shares, a lien or equity in favor of the corporation, to charge them with a debt due from the shareholder, could not be implied. Heart v. State Bank, 2 Dev. Eq. 111; Ang. & Ames on Cor. § 355 ; Steamship Dock Co. v. Herron, 52 Penn. 280. When the rights of third persons, accruing by purchase from the shareholder, intervened, the recognition of such a lien, or equity, would have offended the rigid rules of the common law guarding against secret trusts.

The common law not implying a lien, it has become usual, in statutes creating moneyed or commercial corporations, expressly to declare a lien in favor of the corporation, on the stock of the shareholder, for debts owing by him to the corporation. When a lien is so declared, the courts, in enforcing it, have regarded it as intended for the security of the corporation, and, unless compelled by the language in which it is created, have not confined it to the debt contracted for stock, but have

extended it to the general debts contracted with the corporation. Ang. & Ames on Cor. §§ 355, 570, 571, 572 ; *Union Bank* v. *Laird*, 2 Wheat. 390 ; *Brent* v. *Bank of Washington*, 10 Pet. 596. The assignee, or whoever succeeds to the rights of the shareholder, takes the stock subject to the lien of the corporation. *Stebbins* v. *Phœnix Fire Ins. Co.* 3 Paige, 350 ; *Brent* v. *Bank of Washington*, *supra*. The assignee stands in the relation of one acquiring a thing not negotiable, and his right is subordinate to the prior right of the corporation, to charge the stock with the debts due or contracted by the assignor, before notice of the assignment. *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.* 3 Kernan, 599.

2. We do not understand the appellees to question these propositions, but they insist that the lien created by the 12th section of the appellant's charter must be confined to the debt contracted for stock, authorized by the 5th section ; and this is the view on which the chancellor proceeded in the decree rendered. We cannot assent to this construction. The language of the 12th section is broad enough to embrace every debt contracted with the corporation in the exercise of its corporate powers ; and we cannot, upon conjecture, depart from its plain meaning. The object in creating the lien is the security of the corporation. That security is extended to " any debt or liability " of the stockholder, not distinguishing between the character or consideration of the debts. We can perceive no good reason for such a distinction ; but, on the contrary, we perceive a good reason for embracing every debt properly contracted with the corporation. The stock being liable as a security for the debt, it enables the stockholder, frequently without other security, to contract debts with the corporation, when, without such liability, other security would be required of him. In this case, we find Cullom, the shareholder, without any other security than the supposed liability of his stock, contracting debts for premiums on insurances. The stock not being a debt due from the corporation to the shareholder, this debt cannot be set off against the stock. The common law implying no lien or equity, in favor of the corporation, to retain the stock, or the dividends accruing after notice of the assignment of the stock, for the satisfaction of the debt, we must think the provision in the charter was intended to supply this deficiency of the common law. The security afforded the corporation — a security to which it is justly entitled — is a good and substantial reason for adhering, as we are bound to do, to the plain words of the charter.

In this view we are supported by numerous adjudications. In *Cunningham* v. *Ala. Life Ins. & Trust Co.* (4 Ala. 652), a by-law of the corporation simply declared : " No stockholder

[Mobile Mutual Insurance Company v. Cullom.]

shall be permitted to transfer his stock of the company while in default." This court declared an indebtedness due by promissory note, made by a partnership of which the shareholder was a member, was an indebtedness within the meaning of the by-law, for the security of which the corporation could retain the stock, against the assignee of the shareholder. In *St. Louis Perp. Ins. Co.* v. *Goodfellow* (9 Missouri, 149), the court say, the word *indebted*, when employed in a by-law or a charter, restraining a stockholder from transferring his stock while indebted to the company, applies as well to debts to become due, as to those which are actually due, and as well to those owing by the stockholder as surety or indorser, as to those in which he is principal debtor.

The case of *Rogers* v. *Huntingdon Bank* (12 Serg. & Rawle, 77), bears a close resemblance to the case before the court. The statute of Pennsylvania providing for the incorporation of banks declared : " No stockholder, indebted to the institution, shall be authorized to make a transfer, or receive a dividend, till such debt shall have been discharged, or security to the satisfaction of the directors given for the same." A stockholder was indebted to the bank for an unpaid balance on his subscription of stock, and on a note discounted. Having assigned his stock, the question arose between the assignee and the bank as to the right of the bank to retain the stock for the discounted note, — the right to retain for the unpaid balance of the subscription of stock being admitted. There, as here, the assignee insisted that the general words of the statute should be restrained to the debt for stock ; but the court said : " The words embrace all debts, and there is good reason for their extending to all ; " and sustained the right of the bank to retain for both debts.

We are clearly of the opinion, that the appellant has a lien on the stock, as well for the debts for premiums on insurances effected by Cullom, contracted before notice of the claim of the appellees, Baldwin and the personal representatives of Whiting, as for the unpaid balance on the stock note. The chancellor decreed a lien only for the balance on the stock note. In this he erred ; and for that error, the decree must be reversed, and the cause remanded for proceedings in conformity to this opinion. The appellees must pay the costs of this appeal, in this court, and in the chancery court.