## No. 131.

### WOODS, SLAYBECK & CO. *v.* JOHN ROCCHI.

Privileges are strictly construed and a corporation cannot by Charter Provision retain a privilege upon all stock owned by stockholders who are in debt to said corporation; this method of creating a privilege not being found in the Code or Statutes.

Judgment creditor is entitled to seize and sell all property of his debtor except that specifically exempt by law.

*Kennard, Howe & Prentiss,* attorneys.

*Alfred Grima,* attorney.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

Plaintiffs, judgment creditors, issued execution against defendant, and garnisheed the New Orleans Insurance Association. To the interrogatories propounded, the Company answered that John Rocchi was a director of such company, owning 20 shares of its stock, having a par value of $30.50, and that it has a "preference over all other creditors on said 20 shares of said John Rocchi, for the payment of his aforesaid indebtedness towards it."

In support of their claim for such preference reliance is placed on section 4 Art. 3 of the constitution and charter of the Association, which reads as follows: "transfers of stock shall be made on the books of the association at its office in the City of New Orleans only on demand of the holder thereof and surrender of the certificate, but not while any matured indebtedness to the association exists on the part of the holder."

Plaintiffs have traversed these answers and the judge *a quo* after having maintained the traverse, and commanded the sale of the stock by the sheriff and the application of the proceeds to the payment of plaintiff's judgment. The sole question pressed upon us for determination is whether the clause above recited from the charter of the New Orleans Insurance Association is valid as against plaintiff. The garnishee Co. propounds the following proposition:

1.  A purchaser at sheriff's sale can acquire no greater rights than his debtor has, or, in other words, that he can only expect to stand in the shoes of the debtor.  2.  That this clause of the charter forms a portion of the contract between John Rocchi and the company springing up at the time that he became a stockholder, and that said company could make whatever stipulations they choose, which entering into his title affected it forever, whether in his hands or in those of an assignee.

The correctness of the first proposition is beyond dispute. In support of the second, reference is made to Angell & Ames on Corporations, Chapter XVI section 5 page 508 (3rd Boston edition); Succession Walshe, 10 La. Ann. 544; Walu's Assignee vs. Bank of America, 8 Song & Ranle (Pa.) 89; Bank of Utica vs. Smalley, 2 Cowne (N.R.) 770; St. Louis Perpetual Insurance Asso. vs. Goodfellow, 9 Mo. 149; Rogers vs. Huntington, 12 Sarge and Ranle 77; Mech. Bk. vs. Muchts. Bk., 45 Mo. 516; Bausands vs. Middlesex Co. Bank, 46 Cow. 145; Sleebbins vs. Phoenix Ins. Co., 3 Paye. Ch. (N.Y.) 350; Sabin vs. Bank of Woodstock, 2 Ver. 362; Mobile Ins. Co. vs. Culloin, 49 Ala. 558; Union Bank vs. Land 2 Wheat, 390.

These authorities would undoubtedly be applicable and conclusive of the case at bar, if the contracts springing from this provision had in it nothing contrary to the express law or public policy of this state.  Article 11 of the Civil Code of this state is to the following effect:—

"Individuals cannot by their conventions derogate from the force of laws made for the preservation of public order or good morals."

"But in all cases in which it is not expressly or implicitly prohibited they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."

Article 12 C.C. reads as follows:

"Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed."

Article 19 C.C. is to the following tenor:

"When to prevent fraud or from any other motive of public good, the law declares certain acts void, its provisions are not to be dispensed with on the gorunds that the particular act in question has been proved not to be fraudulent or not to be contrary to the public good."

These enactments are but expressive of general principles which are incorporated either expressly or tacitly in the laws of every civilized people.

They are again in our code repeated and rendered applicable to the charter and by-laws of incorporated companies, or other corporations. Art. 445 C.C. declares: "The statutes (charter) and regulations (by-laws) which corporations create for their police and discipline are obligations on all their respective members, who are bound to obey them; provided such statutes contain nothing contrary to the laws, to public liberty, or to the interest of others." The effect of this clause in the charter of that company, if enforced, is really to give to the New Orleans Insurance Association a preference over plaintiff and other creditors of John Rocchi, for the sum he owes said company. Art. 3182, "Whoever has bound himself personally, is obligated to fulfill his engagements out of all his property, movable and immovable, present and future."

Art. 3183, "The property of the debtor is the common pledge of his creditors and the proceeds of its sale must be distributed among them ratably unless there exists among the creditors some lawful causes of preference."

These articles are certainly clear and emphatic. Outside of some lawful cause of preference, the property of a debtor "must be distributed" amongst the creditors "ratably".

The stock seized in this case is undoubtedly property of John Rocchi. According to the legislation quoted it should be distributed ratably among all his creditors, unless there be some lawful cause of preference. This clause of the New Orleans Insurance Association applies this property exclusively to the debt and prevents its ratable distribution amongst the creditors of Rocchi. It certainly defeats this legislation, as to

this particular property and violates it, unless it creates "a lawful cause or preference."

The Civil Code has not left us to conjectures as to its meaning when it employs the term. The very next article (3184), affords the definition. It says: Article 3184, "Lawful causes or preference are privileges and mortgages." To these may be added, the pledge, as defined by C.C. Arts. 3133, 3134, 3135.

To be therefore a lawful cause of preference, this right of the garnishee must be a pledge, a mortgage, or a privilege. By no other right can the company, under the law, prevent the equal distribution of this property amongst the creditors of its owner. The New Orleans Insurance Association does not claim that they hold a pledge upon the property because there can be no such right without possession, La. C.C. 3152. This possession must be actual, where the thing is corporeal (C.C. 3154) and constructive, by delivery of the evidence thereof, or title thereto, as required by C.C. Art. 3156, 3158. In this case the garnishee has no actual possession, nor has it that constructive possession required by law. C.C. Art. 3289, is to the following effect:

"The following objects alone are susceptible of mortgage: 1. Immovable subject to alienation, and their accessories considered likewise as immovable. 2. The usufruct of the same description of property with its accessories during the time of its duration. 3. Ships and other vessels." The bank stock of defendant comes under none of these headings, and the "alone" therefore excludes it by expression and renders it not susceptible of mortgage.

Article 3186 C.C. defines a privilege as follows: "Privilege is a right which the nature of a debt gives to a creditor which enables him to be preferred before other creditors, even those who have mortgages."

Article 3185 is to the following purpose: "Privilege can be claimed only for those debts to which it is expressly granted in this code."

Under these provisions of law it is not astonishing that our courts have universally held that privileges are *stricti juris* and exclusively the creatures of the law, not to be brought into existence by convention. Hoss & Druham vs. Wilson, 24 La. Ann. 568; Succession of Rousseau, 23 La. Ann. 3; Gousa vs. Bullard, 16 La. Ann. 107; Shore vs. Edast & Co., 13 La. Ann. 52.

Now if, as we have shown, the pretended right of preference is neither a pledge, mortgage, or privilege, certainly the clause in the charter upon which it is based, is in derogation of the express law of the state, as found in C.C. 3182, 3183, and so is null and void.

If it be contended that this clause simply authorizes the company to take not a preference, but to prevent others from receiving or selling the property at forced sale, the law is equally violated, for C.C. 3182, compels the debtor to satisfy his obligations out of "all his property." So C.C. 3183 says that the proceeds "must be distributed" amongst the creditors, etc.

It was certainly a consideration of the articles of our law which has been cited which led the Supreme Court of this state in the case of Bryon vs. Carter, 22 La. Ann. 98, which was very similar to this one, to employ this language: "We do not think, however, that his argument, if established, to the prohibitory clause of the by-laws, made subsequent to the issuance of the stock, could affect the rights of his judgment creditors herein to seize and sell his property, the bank stock, and to demand a completion of the titles thereof. Parties who own property cannot bind themselves not to alienate their property, as long as they owe a certain debt, so as to preclude their judgment creditors from divesting them of the ownership by forced sale. If the principle contended for by the bank be true, owners of property, or the bank, their creditor, could make an agreement to defeat these other creditors —not only to defeat them from recovering what is due, but to debar them from the right of making a forced or judicial sale of their property."

"The corporation is merely a judicial person; it can make no regulation or by-law to deprive a judgment creditor from selling the property of his judgment debtor or from acquiring a formal transfer of the property to himself if he becomes the purchaser, etc."

The Court in 22 La. Ann. 98, distinguishes Snee Walsh, 9 La. Ann. 543, from the case then before it, and consequently from this one. In that case a party had non-negotiable script which was nothing but the evidence of a debt due by the company to its owner. This paper bore upon its face a clause making it transferable only upon the books of the company. Of course this made Walsh a creditor of the company for money, and so soon as in its turn the company became a creditor of the like kind of Walsh, compensation took place between the two debts (C.C. 2207), and this by mere operation of the law, C.C. 2208. Of course if the company had consented to the transfer, it would thereby have revived the debt in favor of the due holder of the script.

In the case of Waln's Assignees vs. Bank of North America, 8 Serg. & Rawle 73, we find the following: "Liens are either, by the common law, a general usage, or a course of dealing or understanding between the parties themselves, or on a contract expressed or implied, 1 B1 R 651; 4 Burr, 2221; 6 East 519."

Of course in states where the common law prevails and which are without express legislation similar to that governing these questions in Louisiana, the clause under consideration, might well be held as creating a lien by contract or usage. But in the face of laws express or direct, such as those prevailing relative to privileges, etc., in this commonwealth, authorities from states in which common law is in force on this subject, can have no bearing whatever.

My learned colleague does not, however, agree with me in the conclusions reached, and under the law, the judgment appealed from stands affirmed.

His Honor Judge Walter H. Rogers delivered the following dissenting opinion;

Article 3, Section 3 of the charter of the Insurance Association, declares: "Transfers of stock shall be made on the books of the association, at its office in the city of New Orleans, only, on demand of the legal holder thereof and on rendering a certificate; but not while any matured indebtedness to the association exists on the part of the holder." From this provision results a condition which is attached to the shares of stock, as a species of property which on thus acquires its critality in title.

It is not a question of privilege or pledge given the corporation to secure an indebtedness due by a member, but it is a part of the agreement between the stockholders, the corporation and the community, a designation of the quality of the particular property, for the act of incorporation is a public act and required to be recorded in the mortgage office, to the end that all persons may be informed of its existence and purposes.

I do not consider therefore that there is in the provisions of the charter of the company anything repugnant to law. The stock is subject to claims of creditors, it is not out of commerce, but it is property of a particular and well understood character, as such only can it be affected either by the act of the stockholder himself or by his creditors—Succession Walsh 9 La. Ann. 544 quoting 8 Serge & Rawles 73. I think the judgment of the district court should be reversed.

Rehearing refused June 27, 1881. The judges still adhering to their decisions.