The St. Louis Perpetual Insurance Company vs. Goodfellow.

THE ST. LOUIS PERPETUAL INSURANCE COMPANY vs. GOODFELLOW.

1. A provision in the charter of a corporation, which requires, that "all rules and restrictions made by the Board of Directors, concerning the transfer of stock, shall be subject to the general law of the State," does not require such rules and restrictions, to be consistent with, and in conformity to, the general law governing the subject matter, to which the rules and restrictions apply. It only means that such rules and restrictions shall not contravene the general law of the State, other than that governing such matter, as the rules and restrictions are intended to govern, and shall be reasonable.

2. The provision of a charter declaring the stock of the corporation personal property and authorizing the Board of Directors to make rules and regulations, concerning the transfer of the stock, subject to the general law of the State, authorizes the Board to adopt a rule prohibiting the transfer of stock, until all debts due by the owner of the stock to the corporation shall be paid, although such rule is, inconsistent with the general law of the State governing the transfer of personal property.

3. The word "indebted," when used in a by-law or charter, restraining a stockholder from transferring his stock, while indebted to the company, applies to debts to become due, as well as to those due, and to those in which the stockholder is surety, as well as those in which he is principal.

4. A transfer of stock, made according to the general law governing the transfer of personal property, is good between the parties, though it be not as against the company.

### APPEAL from St. Louis Circuit Court.

GAMBLE AND BATES, for Appellants.

SPALDING AND TIFFANY, for Appellees.

SCOTT, J., delivered the opinion of the court.

This was action on the case in tort brought by John Goodfellow, against the appellant, for refusing to enter in the books of the company, a transfer, and assigment of stock made to Goodfellow, by David Tatum. On a trial, on the general issue, there was a verdict and judgment for Goodfellow, for $486 20, from which an appeal has been taken to this court.

It seems that D. Tatum, was the owner of twenty-five shares of stock in the St. Louis Perpetual Insurance Company, for which he had a certificate, dated May 1st, 1840, sealed with the company's seal, and attested, by its Secretary, and signed by the President. This certificate stated

that the amount of each share, one hundred dollars, had been paid in and that Tatum was entitled to all the profits, dividends, rights and privileges, which belonged to these shares under the charter and by-laws, and that said stock was assignable and transferable on the books of the company, only in conformity to the provisions of the charter and by-laws thereof.　On the 10th of May, 1842, Tatum made a deed of assignment for valuable consideration, to John Goodfellow, the appellee, for twenty-two of these shares.　On the 13th of May, 1842, Tatum and Goodfellow, went to the office of the St. Louis Perpetual Insurance Company, presented the said certificate of stock, and said deed of assignment of twenty-two shares, and demanded a transfer of said shares on the books of the company, but none was made, or permitted.　At that time, stock was worth at least eighty dollars a share, but at the time of trial, it had depreciated in value, and was worth perhaps fifty or sixty dollars.　When the assignment of Tatum's stock was presented to be entered on the books of the company, Tatum was indebted to the company by several promissory notes, amounting to a sum greatly exceeding the value of the stock, in some of which he was the maker, and in others the endorser.　There was some evidence that one of these notes, amounting to $231 99, was for premiums of insurance; the others were the renewal of former notes.　It appeared that the company discounted notes and bills of exchange, and bought and sold and dealt in bills of exchange, as a business, and employed certain officers entirely for that business, and kept a set of books in which these transactions alone were entered.

The act incorporating the appellant was read in evidence, from which it appears that the said company was entitled to the same powers, rights and privileges, as were granted and confirmed to the Farmers and Mechanics Insurance Company of St. Louis, the 9th section of whose charter enacted, that the stock of said company shall be considered personal property, and shall be assignable and transferable according to such rules and restrictions, as the board of directors shall, from time to time, make and establish; subject, however, to the general law of the State, as the same exists, or may be changed hereafter.　The 8th section of said act, empowered the company to make and prescribe such by-laws, and regulations, as to them shall seem proper, touching the interest and business of said company.　Session acts of 1836–7, 189, 215; Session acts of 1838–9, page 245:　By the last cited act, the name of the appellant was changed, and made as it appears on the record in this cause.

A by-law of the company, (the appellant,) was given in evidence,

which enacted that the stock of the company shall be assignable and transferable on the books of the company in St. Louis, and in such other places as the board may appoint agents for the purpose, personally by the stockholders, or by letter of attorney filed with the secretary or agent, upon the surrender of the certificate thereof, when a new certificate shall be issued therefor; provided, however, that no transfer by any person indebted to the company, shall be registered by the secretary or agent, while the holder is indebted to the company, unless the debt is satisfactorily secured. It was proved that Tatum had gone into bankruptcy.

The defendant asked the following instructions, which were refused:

1. If the jury believe from the evidence, that at the time of the demand made upon the defendant, to transfer the twenty-two shares of stock in question, David Tatum was indebted to the defendant, and did not pay, nor secure the payment of such debt, the defendant was not bound to make the transfer of the stock upon the books of the institution.

2. By the charter of the defendant, and its by-laws, the defendant was not bound to transfer the stock in question on its books, if David Tatum, at the time of the demand made, was indebted to the defendant, and did not satisfactorily secure said debt.

3. The paper given in evidence, purporting to be an assignment from David Tatum to John Goodfellow, of twenty-two shares of stock, is not in point of law any assignment or transfer of said stock.

4. If the assignment from Tatum to Goodfellow, did convey to Goodfellow the twenty-two shares of stock herein mentioned, the said Goodfellow is still the owner of said stock, for aught that appears in evidence in this case.

5. The law has not established any measure of damages in this case, but the amount of such damages must be determined by the jury, from a consideration of all the testimony before them.

The court then gave the following instructions:

1. The portion of the by-laws that undertakes to impose restrictions on the transfer of the stock, to enforce or secure the debts due from the stockholders to the company, is in contravention of law, and void.

2. The measure of damages, is the difference between the value of stock at the time the plaintiff sought to accomplish the transfer of it, and the time the action was brought, and interest until this time.

The main question in this cause is the right of the company to pass the by-law which restrains a stockholder from transferring his stock, until all debts due by him to the company are paid or secured. The

only provisions in the charter which can be regarded as affecting this question, are those above cited, contained in the 8th and 9th sections of the act by which the powers of this company are defined. The ninth section being confined exclusively to the subject of the stock of the company, we will be warranted in saying that all that was intended to be enacted in relation to that matter, is comprehended in its terms; and that the general words of the 8th section are applicable to other by-laws than those which concern the transfer of stock.

It is clear that the company has power to prescribe rules, and impose restrictions on the transfer of stock; but these rules and restrictions must be subject to general law. In saying that the rules and restrictions should be subject to the general law, the legislature could not have intended that they should be consistent with, and in conformity to the law of the State governing the subject matter, concerning which the by-laws were to be enacted. The stock of the company is declared to be personal property. By the general law, property of that kind may be transferred by mere delivery without writing, or by deed, without delivery of the property, and in all places ; now, it would be impossible for the corporation to make other rules, or impose other re-. strictions, under this power to regulate the transfer of stock, without coming in conflict with the law of the State regulating the transfer of personal property. Such a construction would make the provision relative to the transfer, a *felo de se.·* Some other interpretation of its words, such a one as gives them effect, must be sought for. In requiring rules and restrictions relative to the transfer of stock to be subject to the general law, it could only have been contemplated by the Legislature, that they should be reasonable, and not contravene the general laws, other than that relative to the subject about which they are prescribed ; for it is a principle of our jurisprudence, that all by-laws must be reasonable and not repugnant, or contrary to the general law: a construction which would require them to be consistent with, and in conformity to the law regulating the particular subject about which they are made, would prevent the enactment of by-laws in relation to it. So the validity of the by-law will depend on its reasonableness, and its conformity to the general laws, other than that concerning the transfer of personal property. Is it reasonable that a corporation should refuse to register a transfer of its stock, made by a stockholder, until the debts he owes it are paid or secured? The public has a concern in the solvency and security of these institutions, and the means should be allowed them to indemnify themselves against losses. Their capital stock is regarded as held in trust for the payment of the corpo-

rate debts. Angel & Ames on Corporations, 475. The law tolerates a prference amongst creditors. The restriction imposed on the transfer of the stock of the company, is like giving a right of set-off against those who may be indebted to it. If an individual holds the money of another, the person entitled to it can make no transfer or assignment of the money to another, which will deprive the depository of his right of set-off, against debts due before notice of the assignment. The dividends on stock accruing after an assignment, and before notice thereof, may be retained by a corporation against the assignee, to be applied in payment of a·debt actually due from the assignor at the time of notice of the assignment. Bates vs. New York Insurance Co. 3 John· cases, 238.

The argument that a right of creating a lien on stock for the payment of debts due by stockholders to the corporation, is usually conferred in express terms by the charter, shows at least that the exercise of such a power by incorporated companies, is deemed wise and politic by the Legislature ; and while such enactments may negative the existence of the right without them, yet they show that courts would be warranted in inferring its existence from general words in a charter. The right of enacting a by-law imposing a lien on stock, for the payment of debts due by a stockholder, when confined in its operation to members of the company, is not denied. Angel & Ames on Corporations, 296-7. It is only when such by-laws affect third persons having no notice of them, that their reasonableness is questioned. And different opinions have been entertained in regard to the propriety of by-laws of the latter description. McDowel vs. Bank of Wilmington, 1 Harrington, Del. R. 27; Nesmith vs. Bank of Washington, 6 Peck, 329; Angel & Ames, 297, 2 Pierre Williams, Child vs. Hudson Bay Company, 207. It is a rule, that whatever will put a party upon inquiry, is notice, and as no person would have purchased the stock without evidence of the title of the vendor, the form of the certificate would have shown a purchaser, that he took it subject to the rules and restrictions imposed by the by-laws of the company. Be this as it may, the words of the charter were sufficient to empower the corporation to pass such a by-law; and as the wisdom and policy of such a power may be inferred from the frequency with which it is entrusted to incorporated companies in express terms, we cannot say that the company violated its duty in imposing the restriction complained of on the right of transferring its stock.

The word *indebted*, when employed in a by-law or charter, restraining a stockholder from transferring his stock while indebted to the com-

pany, applies as well to debts to become due, as to those which are actually due, and as well to those owing by the stockholder as surety, or endorser, as to those in which he is the principal debtor. The time of negotiating a loan, is the period the directors must look out for security; the fact that a borrower, or his endorser, is a stockholder, may induce them to be less attentive in taking security than they would otherwise be. Angel & Ames, 445, 295; 15 Serg. & Raw. 140.

As to the point that the indebtedness of Tatum to the company, did not grow out of its lawful business, it does not appear from any thing contained in the record, that this question was raised in the court below. There was evidence showing that the company was engaged in discounting notes, and buying and selling bills of exchange, but as it was empowered to loan on interest, its surplus or unemployed capital, or money, upon personal or real security, and to do and perform all necessary matters and things connected with this object (sec. 5,) we will not undertake to determine how far this provision warranted its conduct, or whether it afforded any justification for it; but as the cause will be remanded for another reason, it is deemed proper to withhold an expression of opinion on this subject, until it is fairly and fully brought before the court.

The instruction which prayed the court to declare to the jury, that the assignment from Tatum to Goodfellow was not in point of law any assignment or transfer of the stock, did not contain a correct legal principle. As between the parties to the instrument, it was valid and binding, and conveyed all the right of Tatum to the stock. The provisions in charters or by-laws, which require a transfer of stock to be registered on the books of the company, is made for its benefit, that it may know to whom dividends are payable, who are entitled to vote, and that it may secure any lien it may have on the stock, for the payment of debts due by a stockholder. These being the objects of such provisions, it seems to be well settled that a transfer is binding between the parties to it, and passes all the right of the party making it, although it may not be registered on the books of the company. Union Bank vs. Laird, 2 Whea.; Bank of Utica vs. Smalley, 2 Cow; Sargent vs. Franklin Insurrnce Co. 8 Peck, 90. As to the injury to the assignee of the stock, when the company unlawfully declines to register the transfer, consists in refusing to recognize him as a member, in not allowing him to vote, and in depriving him of his dividends, he has a right of action against the corporation for the value of his shares, as he is denied all the advantages resulting from the ownership of them.

Neither the instruction given, nor that refused, was a correct expo-

sition of the law as to the measure of damages in actions of this kind. There having been no increase of the price of the stock after the refusal of the company to register the transfer thereof, we do not feel ourselves called upon to determine how that circumstance might have affected the rule as to the measure of damages. The value of the stock at the time of the refusal to transfer, under the circumstances of this case, must give the measure of damages. Sargent vs. Franklin Insurance Company, 8 Pickering Rep. 100; Clark vs. Pinney, 7 Cowen, 681.

Judgment reversed and cause remanded.