·THE MECHANICS' BANK, Appellant, *v.* THE MERCHANTS' BANK, Respondent.

1. *Corporation—Sale of stock in, under execution, gives purchaser what title.* —A sale of shares of stock of an incorporated company, under execution, will not vest the title thereto in the purchaser if the defendant in the execution had none; nor will he acquire any greater or other rights than the seller had.

2. *Corporation — Shares of stock — Transfer of indebtedness to bank.*— The by-law of a bank forbidding the transfer of stock where the owner was indebted to the bank, is valid, although inconsistent with the general law of the State governing the transfer of property; and in case of the sale under execution of shares of stock, the purchaser can not recover the shares, in an action of trover against the bank, till such indebtedness be satisfied.

*Appeal from St. Louis Circuit Court.*

*Cline, Jamison & Day*, for appellant.

I. The by-law set out in the agreed case is to be most strictly construed against the bank. It only purports to prevent the stock-owner from transferring his stock while he remains indebted to the corporation. It does not pretend to·interfere with the rights of the general creditor to levy and sell the stock in the manner prescribed by law. (See tit. Executions, 1 Wagn. Stat. 607, §§ 25 26, 28.)

II. If the Merchants' Bank were permitted to set up a lien on this stock, it would be a fraud upon the purchaser at sheriff's sale. (Chouteau *et al.* v. Seddin *et al.*, 39 Mo. 248 ; Newman v. Hook, 37 Mo. 207 ; 1 Greenl. Ev. 207 ; 26 Verm. 373 ; 7 Cow. 762 ; 7 Johns. 338 ; 12 Wend. 423 ; 9 Barb. 618.)

III. The Merchants' Bank was prohibited by the forty-third section of its charter from taking stock or any other personal

33—VOL. XLV.

chattels, except money, in payment of debts. And the stock-owner was duly prevented from transferring his stock when in arrears on installments due for the stock. By clear implication, no bank was authorized to issue its stock until it was fully paid up. (Sess. Acts 1857, pp. 21, 25, 43, 45.)

IV. The court erred in applying the authority of The Perpetual Ins. Co. v. Goodfellow, 9 Mo. 149, to this case.

V. If the Merchants' Bank, by its charter, had been placed upon the same footing with the Perpetual Insurance Company, then the doctrine of that case could not apply to this, as the rights of a general creditor who has taken a perfect legal title at sheriff's sale, without notice of any court equities in favor of the Merchants' Bank, can not be effected thereby, and its right to recover in this case is fully maintained in the following cases: Chouteau Spring Co. v. Harris, 20 Mo. 383; Tuttle v. Walton, 1 Ga. 43; Bank of Utica v. Merch. & T. Bank, 20 N. Y. 501; Bates v. New York Ins. Co., 3 Johns. 238; Sargeant et al. v. Franklin Ins. Co., 8 Pick. 90.

VI. No lien exists at common law in favor of an incorporated company on the stock of its debtor. (Mass. Iron Co. v. Hooper, 7 Cush. 183; Heart v. State Bank, 2 Dev. Eq. 111; Frankfort & S. Turnpike Co. v. Churchill, 7 B. Monr. 427.)

*T. T. Gantt*, for respondent.

The judgment of the Circuit Court is in conformity with the ruling of this court in the case of The Perpetual Ins. Co. v. Goodfellow, 9 Mo. 149; *vide* also Union Bank of Georgetown v. Laird, 2 Wheat. 390; Brent v. Bank of Washington, 10 Pet. 596.

WAGNER, Judge, delivered the opinion of the court.

The plaintiff sued the defendant for the conversion of fifteen shares of stock. From the record it appears that the fifteen shares of the stock of the defendant were, on the first day of January, 1861, held by Alonson F. Doak, James D. Donnell, and John S. Williams, each holding five shares, the par value of which was $100 per share; that in September, 1861, Doak and

Williams, being then directors of the branch of the Merchants' Bank at Osceola, took from the vaults the sum of $500 each, in gold; that Donnell was then indebted to the Merchants' Bank in the sum of $2,500, no part of which has been paid.

The charter of the bank, passed in 1857, and the amendments thereto, passed in 1864, were made part of the case. The amendatory act of 1864 contains the following: "The directors of the parent bank of the Merchants' Bank of St. Louis shall have power to make all by-laws, not inconsistent with any existing law of the State, for the management of its property, the regulation of its affairs, and the transfer of its stock; and the directors of any branch of said bank shall have a similar power, subject to the approval of the parent bank."

On the 26th of February, 1864, the directors of the parent bank at St. Louis adopted the following by-law: " Owners of stock, upon the surrender of the certificates of stock which may have been issued to them, may receive certificates of same, signed by the president and cashier, in such portions and sums as they may choose, and transfer thereof shall only be made on the books of the bank at St. Louis. But no transfer of stock shall be made so as to change the legal ownership thereof, except upon the transfer book at the office where it shall be entered. * * * Nor shall any such transfer be made so long as the stockholder desiring to make such transfer is indebted in any manner to the bank."

It further appears that Doak and Williams, at the time of the taking of the gold, as aforesaid, from the vaults of the bank, declared that they thereby intended to take out the amount of their stock in gold; that, under judgments rendered at the March term, 1864, of the Circuit Court of Hickory county, executions were issued on the 17th day of that month, in favor of the plaintiff, and against Doak, Donnell, and Williams, and under these executions the sheriff levied on, advertised, and sold to the plaintiff the fifteen shares of stock. Upon the foregoing facts the court below rendered judgment for the defendant. The question is whether by the judgment, levy, and execution sale, the plaintiff acquired any title to the stock as against the defendant.

One of the main incidents of property is its transferability. The power of disposing of stock, like the power of disposing of any other property, is a common right, and necessarily attaches to ownership. But while the transfer may not be totally restrained, it may be the subject of fixed and determinate regulations. Under the statutes relating to executions, shares of stock in an incorporated company, belonging to the defendant, may be seized and sold by the sheriff in the manner provided in the act. (1 Wagn. Stat. 607, §§ 25, 26, 28.) The regulation and manner of proceeding are prescribed, but the sale will not vest a title in the purchaser if the defendant in the execution had none; nor will he acquire any greater or other rights than the seller had.

The rule announced in The Perpetual Insurance Company v. Goodfellow, 9 Mo. 149, is decisive of this case. It was there declared that the provision of a charter making the stock of a corporation personal property, and authorizing the board of directors to make rules and regulations concerning the transfer of the stock, subject to the general law of the State, authorized the board to adopt a rule prohibiting the transfer of stock until all debts due by the owner of the stock, to the corporation, should be paid, although such rule was inconsistent with the general law of the State governing the transfer of personal property.

In the present case, the amendment to the charter gave the board direct authority to adopt the by-law prohibiting the transfer of stock where the owner was in default. We see nothing inconsistent with justice and sound policy in such a proceeding. It is simply giving the corporation the right of set-off as against its defaulting stockholders. The equities of the plaintiff were certainly not superior to those of the defendant. Donnell was indebted to the defendant in the sum of $2,500, which amount has never been paid. Doak and Williams took from the vaults of the bank $500 in gold each. That amounted to more than the par value of the shares they respectively held. They were then all defaulters, and the defendant could not be coerced into the transfer of the stock till the arrearages were paid up. The

principles governing this question were very fully discussed by this court in the case above alluded to, and it would be wholly supererogatory to re-state them.

Judgment affirmed. The other judges concur.