————O————

JAS. A. SPURLOCK, Plaintiff in Error, *vs.* THE PACIFIC RAILROAD, Defendant in Error.

1. *Pacific Railroad—Tax certificates—County court—Suit against railroad by assingee of certificates—County subscription—Payment of stock, what in full, what pro rata.*—By the original charter of the Pacific Railroad of Missouri, (Sess. Acts, 1849, p. 220, ? 6) payments upon stock were to be made on calls of the directors, and they might forfeit and sell it in case of default. By the act of 1853, (Sess. Acts of 1853, p. 121) counties might subscribe stock subject to the charter restrictions, and might levy special taxes to pay instalments on the stock, and certificates of stock were to be transferred to the tax-payers for the sums paid in, provided they amounted to one or more entire shares, and

provided the full amount of such shares were first paid by the county court to the railroad company.

By the charter the stock was declared to be personal property, and the directors were empowered to make such by-laws as were not inconsistent with law, one of which declared that no transfer of stock should be made by persons indebted to the company without the consent of the directors.

Morgan county subscribed for 250 shares amounting to $25,000, and paid to the company on the subscription $17,000. Afterwards the county court, on what purported to be the order or request of a majority of the tax-payers, transferred to A. 135 shares, and as no proper certificates had issued to the tax-payers, the transfer was made by the court. In suit against the company for refusing to transfer the stock to A. and to issue certificates therefor, *held;* 1st. The by-law forbidding a transfer of stock by holders indebted for a balance on the stock, was lawful, and the regulation was applicable to the county. 2d. The payment of $17,000 was not a full payment of the 135 shares, but a payment *pro rata* upon all of the 250 shares, and the county was still indebted to the company for a portion of each share, and it was not obliged to make the transfers or issue the certificate.

## *Error to Moniteau County Circuit Court.*

*J. P. Ross & A. W. Anthony,* for Plaintiff in Error.

I. Section 7, of the act of 1853, (Sess. Acts 1853, p. 127; see also, R. C. 1855, p. 412, § 7) allowing the directors to forfeit stock for non-payment of subscriptions, being omitted from the revision of 1865, was repealed. (Wagn. Stat., 896, § 2.) And as the forfeiture was declared in 1870, it had no force. Even were the law valid and subsisting, the proceedings necessary to forfeiture were not adopted. Notice was merely directed to the county, and there was no proof of its receipt. Such notice was not authorized by the statute. The service should have been actual. But whatever the service upon the county, the county court was not the agent of the individual tax payers, and no service of process against the county, or proceedings thereunder, could divest him of his rights. For such divestiture would be without " due process of law," and unconstitutional. Besides, the tax payer immediately on paying taxes amounting to the par value of one or more shares of stock, and on its receipt by the company, had at once a vested right in the corresponding shares of stock. And his right could not be forfeited or impaired

by the laches of the county in afterward failing to respond to calls for its subscriptions.

The theory of defendants that the payment to the railroad of $17,000 did not pay any particular share of the 250 subscribed, is negatived by sec. 31 of its charter. (See also, Wagn. Stat., ed. 1872, p. 305, § 19.)

As to the mode of proceeding, the proper one against the county, if any, would have been by *mandamus*. (Wagn. Stat., 306, § 22; Flagg vs. Palmyra, 33 Mo., 340; Dudley vs. Mayhew, 3 Const., p. 9.)

The failure to issue proper certificates to the tax payers, is not a matter which the railroad can take advantage of. That is one between the county and the tax payers. The transfer in this case was made on the written request of the tax payers, and the company received nearly $18,000, while only $13,500 was ordered transferred. And it matters not whether one or five hundred certificates were issued to plaintiff, nor that the assignment was made to him simply for purposes of collection. (Webb vs. Morgan, 14 Mo., 428; Beattie vs. Lith, 28 Mo., 596; Simmons vs. Belt, 35 Mo., 461.) The transfer to plaintiff, and the manner of it, was that chosen by the tax payers; and as between the tax payers and plaintiff, the transfer was valid, even if it did not comply with certain by-laws of the company. (Ang. & Ames Corp., § 354.)

The tax receipts, if presented to the company for certificates of stock would not avail, and the company could not be made responsible. For they are all informal and show no liability of the company. But the transfer to the plaintiff is sufficient to accomplish that result.

*J. N. Litton*, for Respondent.

I. The plaintiff cannot recover because he is not the assignee of Morgan county. Morgan county could not transfer its stock to plaintiff. Wagn. Stat., (292, § 16) says:

" The stock of every corporation formed under this act, shall be deemed transferable in the manner prescribed by the

by-laws of the company, but no share shall be transferred until all previous calls thereon shall have been fully paid in."

The evidence is undisputed, that not a single share of the stock subscribed for by Morgan county, has been paid, and that since December 10th, 1858, there has never been a time when all previous calls have been fully paid in, but on the contrary, there are many calls utterly unpaid and due ever since 1857; so that Morgan county could not transfer its stock to plaintiff, and therefore defendant is not liable for refusing to issue a certificate to a person who is not the subscriber or the legal assignee of the subscriber.

Again, by its charter, (Act of 1849, § 1; Act of 1851, § 1, and Wagn. Stat., 289, § 1) the defendant was authorized to make by-laws regulating its affairs and the transfer of its stock.

Under the authority of these statutes the Pacific Railroad, on December 11th, 1857, adopted the following by-law, which has been in full force ever since:

"No transfer of stock by any person indebted to this company, whether such debt be due at the time, or not, shall be registered by the treasurer, unless the same be approved by the board, and this company shall have a lien on said stock for such indebtedness."

It is plain, from the preceding statutes, that said by-law was valid and as to the validity of said by-law, defendant also refers to the following decisions:

The very point was decided in Mechanics Bank vs. Merchants Bank, 45 Mo., 516; Perpetual Insurance Co. vs. Goodfellow, 9 Mo., 149; see also, Cunningham vs. Ala. Life Ins. Co., 4 Ala. N. S., 652; McDowell vs. Bank of Wilmington, 1 Harrington, 27; Tuttle vs. Walton, 1 Ga., 43; Child vs. Hudson Bay Co., 2 P. Wms. 207.)

It is clear that if the preceding by-law is a valid one, the plaintiff is barred of his right to maintain the suit, even if Morgan county had paid up in full one hundred and thirty-five shares of its subscription, but was still indebted to defendant on account of the other shares.

Other points were raised in respondent's brief, but are omitted.

WAGNER, Judge, delivered the opinion of the court.

This case comes before us on a writ of error to reverse a judgment rendered in the court below in favor of defendant. The record discloses that in November, 1853, Morgan county subscribed $25,000 in stock to the Pacific Railroad. Taxes were assessed and collected from the taxpayers of the county to pay the calls due on the subscription. The collector of the county, in giving receipts to the taxpayers, did not designate any particular or specific amount paid by them on account of the railroad tax, but gave a general receipt stating that the taxes were paid on lands and personal property, internal improvement fund, road and canal fund, railroad fund, etc. These taxes were levied from the year 1853 to 1861. The county paid of the subscription upwards of $17,000, and in May, 1866, the company found that there was still due and unpaid the sum of $7,246, and on the 5th of that month they required, by a resolution of their board, all persons owing a balance on subscriptions to make payment by the 15th of August, 1866, and notices were required to be given to all who were in arrears in payment that in case of failure to pay by that time, their stock would be forfeited, together with all previous payments thereon.

It was shown in evidence that due notice of this resolution was given by publication in a newspaper printed in the city of St. Louis, and that a copy of the same was inclosed in a letter, duly stamped and put in the postoffice, directed to the clerk of the county court at Versailles, Morgan county, Mo. No payments were made by the county after the adoption of this resolution, and the stock was dropped from the books; and in 1870, the board passed a formal resolution declaring all stock forfeited upon which payments had not been made in full. At the May term, 1868, the county court of Morgan, on what purported to be the order or request of the tax payers of the county, transferred to the plaintiff one hun-

dred and thirty-five shares, or the sum of $13,500 of the capital stock subscribed by the county to the defendant, and as no regular or proper certificates had ever been given to the tax payers, the transfer was made by the county court. The plaintiff demanded of the company a transfer of the stock thus assigned or transferred to him, and that certificates of stock be issued to him; but the company refused. Subsequently the county court appointed A. W. Anthony its agent, and on the first of December, 1871, he presented a copy of his appointment, also of the transfer to the plaintiff, and demanded the privilege of transferring the stock on the company's books to the plaintiff, and of having issued to him certificates for one hundred and thirty-five shares. There was a refusal to permit the transfer to be made and to issue the certificates, on the ground that the stock had been forfeited and that Morgan county had no stock on the company's books. The plaintiff then brought this action for damages.

In order to determine the questions involved, it will be necessary to examine the different acts of the legislature under which the stock was subscribed, and which define and control the rights and liabilities of the parties. In the original act chartering the defendant (Sess. Acts 1849, p. 220, § 6), it is declared that the directors shall make and advertise calls for the payment of the capital stock, at such times and in such manner as they may deem proper, and if any stockholder shall fail to pay any such requisition, within ten days after the time appointed, the said company may recover the same with interest; and if not collected, may declare the stock forfeited and sell the same; and no delinquent stockholder shall vote in said company. In the act amendatory of the charter, (Sess. Acts 1851, p. 271, § 8) it is provided that when payment for the stock of any subscriber or stockholder shall be fully made, the president and directors shall deliver one or more certificates of such stock, signed by the president and countersigned by the treasurer, under the seal of the company, to such subscriber or stockholder for the number of shares belonging to him or her, which certificates shall be transferable

in a book kept for that purpose by the company; and when transferred, shall be delivered up to the president and directors, and be canceled, and new certificates be issued to the assignee. All assignments of shares partially paid in, shall be entered upon the books of the company; but such assignment shall in no wise exempt the assignor or his representatives from liability for the payment of all sums due or to become due upon the stock assigned by him, if the assignee or his representatives shall fail to pay the same.

The act to authorize the formation of railroad associations and to regulate the same, passed in 1853 (Sess. Acts 1853, p. 121), provides, in section 30, that upon the making of a subscription by a county court or city, the county or city shall thereupon become like all other subscribers to stock, entitled to privileges granted, and subject to the liabilities imposed by the act or by the charter of the company in which such subscription shall be made; and in order to raise funds to pay the instalments which may be called for from time to time by the board of directors of the road, it shall be the duty of the county court or city council making the subscription, to issue bonds or levy a special tax upon all property and taxables made taxable, by law, for State and county purposes to pay such instalments, to be kept apart from other funds, and appropriated to no other purpose than the payment of such subscription. By the 31st section it is provided that for all such taxes levied and collected for railroad purposes, the county court or the city council, as the case may be, shall cause to be issued and delivered to the persons paying such special tax, a certificate for the amounts thereof paid, and such certificates shall state the county or city in which, and the railroad for which, the tax was collected, and shall be transferable by the holders thereof, and convertible into stock of such railroad, whenever presented, in amounts equal to one or more entire shares of the stock of such railroad, to such proper officer of such county court or city council as shall be designated by such court or council, by transfer to be made by such officers in conformity with the laws of the

railroad company; and when such transfer is made, the company shall issue a certificate of stock to the person entitled thereto, or his legal representatives, for the number of full shares thus transferred; provided, that no such certificate of stock shall issue upon such transfer unless the full amount of the par value thereon shall have first been paid to the railroad company by the county court or the city council.

At the time the plaintiff appeared in the company's office and demanded a transfer of the stock in his name, the refusal was based on the ground that Morgan county was still indebted to the company for a portion of the stock, and there was a by-law of the company against making transfers under such circumstances. By the charter the stock was declared to be personal property, and the directors were empowered to make and establish such by-laws, rules, orders and regulations not inconsistent with law, as to them might seem needful. By one of the company's rules or by-laws it was provided that "no transfer of stock by persons indebted to this company, whether such debt be due at the time or not, shall be registered by the treasurer unless the same be approved by the board, and this company shall have a lien on said stock for such indebtedness."

This by-law was subsisting and in full force when the demand for a transfer was made. In the case of the St. Louis Perpet. Ins. Co. vs. Goodfellow, (9 Mo., 149) it was decided that, where the provision of a charter declared the stock of the corporation to be personal property and authorized the board of directors to make rules and regulations concerning the transfer of the stock, subject to the general laws of the State, the board was authorized to adopt a rule prohibiting transfer of stock until all debts due by the owner of the stock to the corporation were paid, although such rule was inconsistent with the general law of the State governing the transfer of personal property. This case was followed in The Mechanics' Bank vs. The Merchants' Bank, (45 Mo., 513) where it was held that the by-law of a bank forbidding the transfer of stock when the owner was indebted to the bank

was valid, and that in case of sale under execution of shares of stock, the purchaser could not recover the shares in an action of trover against the bank, till such indebtedness was satisfied. These authorities are conclusive upon the question that the company had the right to make the by-law prohibiting the transfer, if there was a balance on the stock still unpaid. The undisputed facts are, that the county subscribed for stock to the amount of $25,000, or for two hundred and fifty shares, and paid up a little over $17,000, or for one hundred and seventy shares. The plaintiff now claims one hundred and thirty-five shares, and insists that 'as the county paid a greater amount than his shares represent, that therefore they at least were paid for. But this position is wholly inadmissible, and is at variance with every just principle upon which the contract must be interpreted. The subscription of $25,000 was an entire thing, and the payments were all made upon instalments called for by the board of directors. These calls were not upon any particular shares, but upon the entire amount. They were a certain per cent. paid on all the shares, but not a full payment on any one share. The subscription was for so many shares, and the instalments called for were for a certain definite amount in part payment of all the shares. There was no separation admitting of full payment for any less number of shares than the whole. Such being the case, the county was still indebted to the company when the demand was made for the transfer of the shares, and the company had the legal right to refuse compliance.

The ruling of this point against the plaintiff is really decisive of the whole case.

The counsel for the plaintiff are in error in supposing that the provision for the forfeiture of stock was inoperative, at the time of the proceeding, because the same was omitted in the revision of 1865. We have not thought it necessary to examine what the effect of such omission would be. But the right to forfeit was given in the charter, and did not depend upon the general statutes. This question, however, is now unimportant, and it is not necessary to pursue it. The plain-

tiff presents himself here as representing the citizens who paid the taxes. It is evident that the statute has not been complied with. We utterly fail to see where the county court had any authority for its action. It is only pretended that a majority of the taxpayers joined in the request to have the stock transferred to the plaintiff. How, then, could the court pretend to act for all, or where is the power given for the court to take action under such circumstances? The law says that where taxes are levied and collected for railroad purposes, the county court shall cause to be issued and delivered to the persons paying such special taxes, certificates of the amounts paid, and such certificates shall be transferable by the holders thereof, and convertible into stock of the railroad—whenever presented, in amounts equal to one or more entire shares of the stock of the railroad, to such proper officer of the county court as shall be designated by the court—by transfer to be made by such officer in conformity with the laws of the railroad company; and when such transfer is made, the company shall issue a certificate of stock to the person entitled thereto, or his legal representatives, for the number of full shares transferred; provided, that no such certificates of stock shall issue upon such transfer unless the full amount of the par value thereon shall have first been paid to the railroad company by the county court. Now, it would seem that the meaning of this law is very clear. Whenever the holder of certificates shall present them to the county court, then the officer designated for the purpose shall make the transfer on the books of the company, in conformity with the laws of the company, and it shall be made the duty of the company to issue certificates of stock to the person entitled thereto, but as a necessary and indispensable preliminary, the full amount of the par value of the stock must first have been paid up by the county. In the present case, as we have seen, the county had not paid up the stock, hence no transfer could be made according to the laws of the company. The decision of these questions is entirely conclusive of the whole case, and in every view which has been presented to us, the plain-

tiff has no standing in court. It, therefore, becomes entirely unnecessary to enter into an examination of the instructions refused for the plaintiff, or of those given for the defendant, upon which a non-suit was taken.

The judgment should be affirmed. All the judges concur, except Judge Vories, who is absent.