ALEXANDER C. McGRAW ET AL. v. RACHEL SOLOMON
AND CHARLES R. HENRY.

*Fraudulent purchase—Mortgage—Good-faith holder—Value.*

Whatever the rule may be in the case of negotiable instruments,
it is well settled that a conveyance of lands or chattels, as a
security for an *antecedent* debt, will not operate as a *purchase
for value*, or defeat existing equities; citing 2 Amer. Lead.
Cas. (5th ed.) 233; *Stone v. Welling*, 14 Mich. 514; *Boxheimer
v. Gunn*, 24 Id. 372; *Kohl v. Lynn*, 34 Id. 360; *Edwards v.
McKernan*, 55 Id. 523.

So *held*, where a vendor, who had the right to rescind
the sale for fraud on the part of the vendee, replevied the
goods from a trustee of mortgagees whose mortgages were
given to secure *bona fide* antecedent indebtedness, and who
took the same without notice or knowledge of the rights of the
vendor.

Error to Wayne. (Gartner, J.) Argued November 14,
1890. Decided December 5, 1890.

Replevin. Defendants bring error. Affirmed. The
facts are stated in the opinion.

*Henry & Cornville* (*W. H. Simpson*, of counsel), for
appellants, contended:

1. "The general rule is not disputed that when property is obtained
   through fraud, under color of a purchase, the vendor may
   rescind, and is entitled to demand and receive back the prop-
   erty on returning within a reasonable time what he has
   received and placing the vendee in *statu quo*. *Martin v. Ash*,
   20 Mich. 166; *Wilbur v. Flood*, 16 Id. 40. But this case differs
   from ordinary contracts of purchase, in the fact that the party
   to whom the property has been delivered, and who now appro-
   priates it, was in no manner connected with the fraud in the
   purchase; and as *personal* dishonesty is not charged upon her,
   the case must be decided upon the assumption that she has been
   guilty of none, and that the wrong has been on the part of

her husband exclusively;" citing *Morrison v. Berry,* 42 Mich. 396.

2. The plaintiffs had no right to replevy the property, although Mrs. Solomon might have bought goods without intending to pay for them, after she had conveyed the goods to innocent third parties, as after the property had changed hands it was too late to rescind the sale; citing *Jones v. Disbrow,* Har. Ch. 104; *Carroll v. Rice,* Walk. Ch. 377; *Lyon v. Waldo,* 36 Mich. 357.

3. Even though Mrs. Solomon may have bought the goods without intending to pay for them, yet, by the sale and delivery of the goods to her, she became vested with their ownership, and had the right to dispose of them in any lawful way, unless before such conveyance the sellers rescinded the contract; citing *Pangborn v. Ruemenapp,* 74 Mich. 578; *Wilbur v. Flood,* 16 Id. 40; *Dunks v. Fuller,* 32 Id. 244; *Campau v. Van Dyke,* 15 Id. 379; *Hollister v. Loud,* 2 Id. 316; *People v. Bristol,* 35 Id. 28; *Moriarty v. Stofferan,* 89 Ill. 528; *Farwell v. Hanchett,* 120 Id. 573; Wells, Repl. § 331; 2 Pars. Cont. 780.

4. Mrs. Solomon had a right to mortgage the goods for a *bona fide* pre-existing indebtedness; citing *Dwight v. Lumber Co.,* 67 Mich. 507; *Olmstead v. Mattison,* 45 Id. 619; *Beurmann v. Van Buren,* 44 Id. 496; *Loomis v. Smith,* 37 Id. 595; *Jordan v. White,* 38 Id. 253; *Bank v. Chapelle,* 40 Id. 447; *Sweetzer v. Higby,* 63 Id. 22; *Hubbard v. Taylor,* 5 Id. 162; *Field v. Fisher,* 65 Id. 611; *Root v. Potter,* 59 Id. 498; *Root v. Harl,* 62 Id. 420.

5. The question whether Mr. Henry and the mortgagees were *bona fide* purchasers was for the jury; citing *Palmer v. Mason,* 42 Mich. 146; *Root v. Potter,* 59 Id. 506.

6. The court should have instructed the jury, as requested by the defendants, that the sale to and possession of Charles R. Henry was valid as against plaintiffs, unless it could be shown by them by a clear preponderance of evidence that the goods were fraudulently purchased by defendant Rachel Solomon from the plaintiffs, and that said Henry had knowledge or notice of the fraud or participated in it; citing *Bank v. Chapelle,* 40 Mich. 447; *People v. Bristol,* 35 Id. 28; *Andrews v. Fillmore,* 46 Id. 316; *Austin v. Dean,* 40 Id. 388; *Iron Works v. Bresnahan,* 66 Id. 501.

*Conely, Maybury & Lucking* (*M'Cutcheon & Elliott,* of counsel), for plaintiffs, contended for the rule stated in the opinion, citing the authorities therein cited.

LONG, J.    This action of replevin was commenced in

the Iosco circuit court, and subsequently transferred to the Wayne circuit for trial. On the trial the plaintiffs had verdict and judgment. Defendants bring error.

It appears that, in the fall of 1888, defendant Rachel Solomon, who was doing business at Oscoda and Escanaba, purchased from plaintiffs $2,700 worth of goods, of which goods $2,200 worth went to Oscoda, and the balance to Escanaba. The goods were shipped from Detroit on September 28. The rubber goods were payable on December 1, and the other goods were sold on four months' time from date of shipment. These goods were not paid for. It is claimed on the part of the plaintiffs that an order was made by Mrs. Solomon for goods, which the plaintiffs refused to fill, and that shortly thereafter Mr. Marks, the agent of Mrs. Solomon, came to Detroit and inquired why they could not have the goods, and then and there represented to the plaintiffs that Mrs. Solomon was good, and was worth over $40,000 over and above all liabilities. At that time and upon that representation the plaintiffs filled the order and shipped the goods. The plaintiffs, claiming to have discovered that the representations were false, at once rescinded the sale, and brought replevin for the goods, about $800 worth being found and taken under the writ.

At the time of the issuing of the writ of replevin, defendant Henry was in possession of the goods, claiming to hold them under a declaration of trust made by him, and a bill of sale executed by Mrs. Solomon to him. It appears that, prior to the sale of these goods by the plaintiffs, Mrs. Solomon had become indebted to various other parties, among whom were Edson, Moore & Co., of Detroit, and James E. Forrest. On November 15, 1888, Mrs. Solomon executed a chattel mortgage to Edson, Moore & Co. to secure this indebtedness, covering the entire stock of goods at Oscoda, for the sum of $4,979.03.

On November 13, 1888, she also executed to James E. Forrest, a banker of Au Sable, a chattel mortgage on this stock for $14,750. At the time the bill of sale was made by Mrs. Solomon to defendant Henry, the declaration of trust was drawn up and executed by Henry, and the consent of Mrs. Solomon, James E. Forrest, and Edson, Moore & Co. indorsed thereon. The declaration of trust is as follows:

## "DECLARATION OF TRUST.

"I, Charles R. Henry, of Au Sable, Iosco county, Michigan, the trustee named in the annexed bill of sale, do hereby declare the object and purpose of the trust reposed in me hereunder as follows:

"1. That the said conveyance of the property described in said bill of sale is made to me as trustee for the purpose of securing the payment of the sum of three thousand dollars ($3,000), due from Rachel Solomon, of Au Sable aforesaid, to James E. Forrest, and the sum of four thousand nine hundred and seventy-nine and 3-100 dollars due from the said Rachel Solomon to Edson, Moore & Co., of Detroit, Michigan; and I hereby declare that I receive the conveyance of the title and possession of the property aforesaid for such purpose and no other. The said sum of three thousand dollars is the same indebtedness due James E. Forrest, and referred to in a certain chattel mortgage executed October 15, 1888, by said Rachel Solomon to James E. Forrest, conveying the property described in said bill of sale with other property, said indebtedness being the note of three thousand dollars ($3,000) dated October 15, 1888, which matured this day, and referred to in said chattel mortgage. The said sum of four thousand nine hundred and seventy-nine and 3-100 dollars, due said Edson, Moore & Co. is the same indebtedness referred to in a certain chattel mortgage conveying the property in said bill of sale described, executed this day, and under which said Edson, Moore & Co. have this day taken possession of said property, which possession, upon the execution of these papers, is to be transferred to me, said Charles R. Henry, and the security under said bill of sale is given in lieu of said chattel mortgage to Edson, Moore & Co., and in lieu of said chattel mortgage to James E. Forrest to the extent

of $3,000 of the amount secured thereby, to wit, said note of $3,000, dated October 15, 1888, and no further, to wit: Said chattel mortgage, after the execution of these papers, is to stand as security for the payment of the several notes secured thereby, other than said note of $3,000, and all of the provisions in other respects are to remain unchanged.

"2. I am to assume control of the property described in said bill of sale, and be responsible to said James E. Forrest and Edson, Moore & Co. to the extent that I assume the obligation hereby of paying the sums of money aforesaid due them, to wit: To James E. Forrest, $3,000, to Edson, Moore & Co., $4,979.03, and interest thereon at seven per cent. till paid, the same to be paid as follows: The expenses of said trustee in conducting the business of selling said property in the most advantageous way practicable, the interest of all concerned being considered, shall first be paid out of the proceeds of the sale of said property, and the balance of the proceeds of such sale to be paid by the said trustee monthly to said James E. Forrest and Edson, Moore & Co., in proportion to the amounts of their respective claims, until both shall be paid, when all of said Henry's claim to said property shall be discharged, and the remainder surrendered to whom shall be entitled to receive the same.

"3. I am to insure the property described in said bill of sale against loss or damage by fire to the extent of the indebtedness aforesaid due said Forrest and Edson, Moore & Co., and pay the cost of the same out of the proceeds of the sale of said property, and as a part of the expenses of disposing of said stock and property.

"CHARLES R. HENRY.

"Dated November 15, 1888.

"We hereby consent that the object and purpose of the execution of the annexed bill of sale is correctly stated and recited in the foregoing declaration of trust, and hereby agree to abide by said Henry's acts in carrying out the purposes aforesaid.

her
"RACHEL X SOLOMON.
mark

"JAMES E. FORREST.

"EDSON, MOORE & CO.,

"In the presence of          "By E. G. STEVENSON,
"JOE MORIENTHAL.            Their Attorney in Fact.
"HARRY SOMERFIELD.

"In consideration of the security afforded me by the annexed bill of sale, and of the transfer of the possession of the property described therein to Charles R. Henry by Edson, Moore & Co., who have taken possession of the same under their chattel mortgage, I hereby agree and consent that the lien of said Henry under said bill of sale annexed shall be a prior lien upon said property to the chattel mortgage executed by Rachel Solomon to me October 15, 1888.                    J. E. FORREST."

Thirty-five errors are assigned. On the hearing of the case in this Court, it was intimated to counsel that the judgment would to affirmed. The impression upon the Court then was that Mr. Henry did not stand in the position of a *bona fide* purchaser. Upon a more careful reading of the record I am convinced that the Court was then right.

It cannot be questioned, and counsel scarcely deny, that a most stupendous fraud was practiced by Mrs. Solomon, and her husband and Mr. Mack, her agents, in the purchase of these goods, as well as the goods of other parties over this State and out of the state. The goods so purchased on time were taken to Oscoda and Escanaba, and the small store at Oscoda packed from floor to ceiling, the goods of different parties intermingled, and many of the goods concealed, or attempted to be concealed, in the attic of the store, the house, and in the barn, so that when search was made it was very difficult to select from the stock the goods bearing marks of the plaintiffs and separate them from others. In this effort no assistance was to be obtained from Mrs. Solomon or her husband, or agent Mack, but they constantly put stumbling-blocks in the way of the goods being found, and made false statements as to where good were stored. That the goods were purchased with no intent on the part of Mrs. Solomon and her agents to pay for them is too plain to need discussion. The evidence of

the fact was submitted to the jury, and they properly so found.

Practically the only question is, was Mr. Henry a *bona fide* purchaser? There is but one answer to the question. He was not. He represented parties under the declaration of trust, as it is called, who had taken chattel mortgages upon these goods to secure antecedent debts. It is true that though the goods were purchased with no intent to pay for them, and there was such fraud in the transaction that the vendors had the right to rescind the sale and reclaim the goods, yet, if they had passed into the hands of one who had purchased without notice of the fraud, and for a valuable consideration, the vendors could not reclaim them. This doctrine is based upon the principle that the vendor is estopped to set up his title against the innocent purchaser, because he put his property into the hands of the fraudulent vendee, and clothed him with the *indicia* of ownership, whereby he has been enabled to put the innocent purchaser into a position where he would be injured if the original vendor were allowed to retake his own.

It is not contended here but that the debts for which the mortgages were given to Edson, Moore & Co. and James E. Forrest were pre-existing debts; but it is contended that Mrs. Solomon had a right to mortgage the goods to Edson, Moore & Co. and James E. Forrest for a *bona fide* pre-existing indebtedness, and, having done so, these mortgagees were in the position of good-faith purchasers. This rule for which counsel for defendants contend is not to be sustained upon reason or authority. In *Johnson v. Peck*, 1 Woodb. & M. 334, Mr. Justice Woodbury clearly states the principle. The case arose, as the present case, between a vendor of goods, who claimed to recover them by reason of the fraud of

the vendee, and one who claimed to hold the goods under a chattel mortgage given by the vendee, the mortgage being given to secure a pre-existing debt. It was there said:

"One party had obtained credit by means not justifiable, and the other had parted with his property under false pretenses and averments which were material and untrue. It was right then, in law as well as equity, that such a purchaser should not profit by his own wrong, and that the seller and purchaser should in such case stand as if nothing had occurred between them. But when rights of third persons intervene in this class of cases they are to be upheld, if those persons purchased the property absolutely, and parted with a new and valuable consideration for it without notice of any fraud. Because, unlike the case of theft, the vendor here voluntarily parts with the possession of his property, and thus enables the purchaser to gain a credit, or to appear to be the owner and thus be bought of honestly. * * * If they buy absolutely, and for a new and full consideration, and without notice of the fraud in procuring the goods, they are to be protected in holding them. But if they have notice of the fraud, or give no new valuable consideration, or are mere mortgagees, pawnees, or assignees in trust for the debtor, or for him and others, such third persons are to be regarded as holding the goods open to the same equities and exceptions as to title as they were open to in the hands of the mortgagor."

The doctrine is stated in 2 Amer. Lead. Cas. (5th ed.) p. 233, as follows:

"Whatever the rule may be in the case of negotiable instruments, it is well settled that a conveyance of lands or chattels, as a security for an antecedent debt, will not operate as a purchase for value, or defeat existing equities."

This principle has been recognized by this Court in *Kohl v. Lynn*, 34 Mich. 360; *Stone v. Welling*, 14 Id. 514; *Boxheimer v. Gunn*, 24 Id. 372; *Edwards v. McKernan*,

55 Id. 523.   Under the declaration of trust, defendant
Henry stood in no better position than these mortgagees,
whose claims he represented and was to pay out of the
goods.

The judgment must be affirmed, with costs.

The other Justices concurred.