BRONSON ELECTRIC CO. *v.* RHEUBOTTOM.

1. CORPORATIONS—LIEN ON STOCK—BY-LAWS.
    A by-law creating a lien on stock for debts of the stockholder to the corporation is valid, though not binding as against innocent purchasers for value.

2. SAME—ASSIGNMENT OF COLLATERAL—FORBEARANCE TO SUE—PAROL AGREEMENT—BONA FIDE PURCHASER.
    A creditor who accepts from his debtor a note for the amount due, payable on demand, together with shares of corporate stock assigned as collateral, obtains no more than the shareholder's equity in the stock, though he agrees by parol to forbear bringing suit for a time in consideration of its receipt; since, the parol agreement being incompetent to be shown in the event of immediate suit upon the note, there is no sufficient consideration for the assignment.

Appeal from Branch; Yaple, J.    Submitted December 2, 1899.    Decided January 23, 1900.

Bill by the Bronson Electric Company against Frank C. Rheubottom, Celeste M. Bond, administratrix of the estate of William H. Bond, deceased, and Joseph W. McCausey, to establish a lien on certain stock in complainant corporation.    From a decree dismissing the bill, complainant appeals.    Reversed.

*John B. Shipman,* for complainant.

*H. H. Barlow,* for defendant McCausey.

MOORE, J.    The complainant is a corporation organized under chapter 127, 1 How. Stat.; section 4192 providing:

"Certificates of stock may be transferable, but the transfer shall not be valid unless a record of the same shall be made on the books of the company in such form as the directors shall prescribe."

At the stockholders' meeting of the corporation, November 28, 1895, all being present, including the defendants Rheubottom and Bond, and voting therefor, by-law 6 was passed, reading as follows:

"Any stockholder desiring to sell his or her shares of stock in this incorporation shall first notify the president or secretary of such fact, and give him and the board of directors ten days in which to purchase, or find a purchaser for, said stock. At the expiration of said ten days' time the stockholder may sell at pleasure, providing the stockholder is not indebted to the company. Any indebtedness for lighting or any other purpose to the company shall become a proprietary lien on the stock to the full amount of the indebtedness."

On March 6, 1896, a contract was made by Rheubottom and Bond with the company, which Rheubottom and Bond failed to carry out, and when the bill was filed there was due upon it to the company $650. Rheubottom and Bond each owned 50 shares of stock in the company. Their certificates are dated December 11, 1895. These certificates provide that the stock is "transferable only on the books of said company, in person or by attorney, on the surrender of this certificate."

On December 21, 1896, Rheubottom and Bond were indebted to the Union City National Bank in the sum of $935.71, which indebtedness was then due. The bank demanded payment, and Rheubottom and Bond desired an extension, and offered as security the 50 shares of stock owned by Rheubottom and the 50 shares of stock owned by Bond. At the time this offer was made, Rheubottom and Bond stated that they could sell this stock for $1,800, but hoped to get more, and that they could sell the stock at any time, and pay the indebtedness. The president of the bank suggested that they give such collateral security for the loan until such time as they could sell it. These shares of stock were, under such arrangement, indorsed n blank, and delivered to the bank, and a note given for he indebtedness, which, in words and figures, is as follows:

"$935.71.        UNION CITY, MICHIGAN,
                        "December 21, 1896.
    "On demand after date, we, or either of us, promise to
pay J. W. McCausey, president, or order, nine hundred
and thirty-five dollars and seventy-one cents, at the Union
City National Bank, value received, with annual interest
at seven per cent.
                    [Signed]    "RHEUBOTTOM & BOND."

    At the time of this offer and transfer, the bank had no
notice or knowledge of the existence of any claim on the
part of the Bronson Electric Company upon such stock.
The bank held the stock and their note, without taking
any steps for collection, until February 15, 1897.    In
February the bank was notified that complainant claimed
a lien on the stock.    The bank, on the 15th day of Febru-
ary, 1897, gave personal notice, and advertised the same
for sale on the 15th day of March, 1897, at public auction,
at their banking office, in Union City; and on March 15,
1897, it was sold and bid off in form for $275, Mr. Mc-
Causey acting as representative of the bank, auctioneer,
and the bidder for and buyer of the stock.    At the time of
the sale he was again informed by officers of the company
of the complainant's claim upon the stock.    The stock has
never been presented to the company, or transferred upon
its books; nor has McCausey or any one else asked to have
it transferred, or surrendered the certificates to the com-
pany.    Both Rheubottom and Bond were, and are still,
insolvent.

    The bill was filed to enforce the complainant's lien upon
the stock for the amount owing it by Rheubottom and
Bond under their contract, and for its sale to satisfy the
same; McCausey, having a subsequent claim upon it,
being made a defendant.    The bill was taken as con-
fessed by both Rheubottom and Bond's administratrix,
after personal service upon each.    McCausey alone an-
swered, admitting Rheubottom and Bond each owned 50
shares of complainant's stock, as alleged; alleging that
they owed the Union City National Bank, of which he
was president, $935.71, "and, desiring an extension of

such indebtedness," gave it their note for that amount, due on demand, and to secure the note turned over this stock, the bank knowing nothing of complainant's lien upon it; that Bond is dead, and his estate is insolvent, and Rheubottom is also insolvent; that afterwards, and before the bill was filed, the bank sold the stock to satisfy the note, and it was bid off by him, and "he is the *bona fide* owner thereof, and paid a valuable consideration therefor, and that the same is now in his possession," etc. To this answer a general replication was filed, and, as to him, the case was heard on proofs. The decree dismissed the bill.

A good many questions are argued in the briefs, but we think it necessary to discuss but two of them:

First, did the complainant have a lien upon the stock for the amount of the debt due to it from Rheubottom and Bond? The complainant answers this question in the affirmative, and cites the following authorities: 2 Beach, Priv. Corp. §§ 644–646; 1 Cook, Stock, Stockh. & Corp. Law, §§ 522, 524, 525; 1 Thomp. Corp. § 1032; Ang. & A. Corp. §§ 325, 355; 1 Mor. Priv. Corp. § 201; Wood's Field, Corp. § 122; 2 Cook, Corp. §§ 524, 525; 1 Spell. Priv. Corp. §§ 478, 486; *Jennings* v. *Bank of California*, 79 Cal. 323 (5 L. R. A. 233, 12 Am. St. Rep. 145); *Reading Trust. Co.* v. *Reading Iron Works*, 137 Pa. St. 282; *Mohawk Nat. Bank* v. *Schenectady Bank*, 78 Hun, 90; *Wetherell* v. *Loan Ass'n*, 153 Ill. 361; *New England Trust Co.* v. *Abbott*, 162 Mass. 148 (27 L. R. A. 271); *Tuttle* v. *Walton*, 1 Ga. 43; *John C. Grafflin Co.* v. *Woodside*, 87 Md. 146; *Cunningham* v. *Trust Co.*, 4 Ala. 652; *St. Louis Perpetual Ins. Co.* v. *Goodfellow*, 9 Mo. 149; *M'Dowell* v. *Bank of Wilmington*, 1 Har. (Del.) 27; *Child* v. *Hudson's Bay Co.*, 2 P. Wms. 207; *Spurlock* v. *Railroad*, 61 Mo. 319; *Vansands* v. *Middlesex County Bank*, 26 Conn. 144; *Planters', etc., Ins. Co.* v. *Selma Sav. Bank*, 63 Ala. 585, 594. There is some conflict in the authorities upon this proposition. 1 Thomp. Corp. § 1032, states the rule as follows:

" According to the weight of authority, a by-law creating a lien on the shares of a member for debts due by him to the corporation is valid and binding, though not as against innocent purchasers for value."

The second question then becomes pertinent: Was the bank an innocent purchaser for value? On the part of defendant McCausey it is insisted an agreement to forbear bringing suit for an indefinite time, if followed by actual forbearance for a reasonable time, is a good consideration; citing *Calkins* v. *Chandler*, 36 Mich. 320 (24 Am. Rep. 593); *Howe* v. *Taggart*, 133 Mass. 284. See, also, Clark, Cont. 171, and cases cited. On the other hand, it is urged that the bank did not change its relations with Rheubottom and Bond; that its debt was an antecedent one; that the bank held the stock as collateral security upon an old debt, and that this did not make it an innocent holder for value, or exempt the stock from being chargeable with all equities against it,—citing *McGraw* v. *Solomon*, 83 Mich. 442; *Edson* v. *Hudson*, Id. 450, 455; *Henriques* v. *Ypsilanti Sav. Bank*, 84 Mich. 168, 176; *Schloss* v. *Feltus*, 103 Mich. 525 (36 L. R. A. 164); *Brooke* v. *Struthers*, 110 Mich. 562, 569 (35 L. R. A. 536); *Vincent* v. *Hansen*, 113 Mich. 173, 174. It does not appear very clearly by the testimony that it was agreed the bank should forbear suit. Three writings were passed upon the occasion when the stock was transferred. Two were the assignments in blank upon the certificates of stock, and the other was a note, a copy of which already appears herein. This note might have been sued immediately by the bank, and, if sued, Rheubottom and Bond could not set up, by way of defense, any agreement to forbear suit. *Phelps* v. *Abbott*, 114 Mich. 88. The bank had the same right to immediately sue this note which it had to sue before the note was given. *Peninsular Sav. Bank* v. *Hosie*, 112 Mich. 351; *Hitchings* v. *Edmands*, 132 Mass. 338. It parted with nothing when the stock was assigned to it, and we do not think it can be said it was an innocent purchaser for value. The most

that can be said in its favor is that it obtained the right to sell whatever equity Rheubottom and Bond had in the stock, and apply the proceeds on its debt.

It is urged in the briefs of counsel that complainant failed to show that Rheubottom and Bond were indebted to it. The record shows otherwise. Mr. Warner swore positively to the amount of the indebtedness, and no evidence was offered to the contrary. The complainant is entitled to a lien on the stock of $650 and interest.

The decree of the court below is reversed, and one will be made here directing a sale of the stock to satisfy this lien; the balance, if any, to be paid to the defendant McCausey. Complainant will recover costs of both courts.

The other Justices concurred.